EDWIN J. THALMAN *v.* AMELIA E. SCHULTZE *et al.*

(No. 7002)

Submitted September 8, 1931. Decided September 15, 1931.

*Handlan, Garden & Matthews,* for plaintiffs in error.
*O'Brien & O'Brien,* for defendant in error.

MAXWELL, JUDGE:

The plaintiff, Edwin J. Thalman, was awarded damages by a jury in the circuit court of Ohio County in an action of trespass on the case against the defendants, Amelia E. Schultze, Orin S. Carson, and J. W. Schultze, for personal injury and for damage to his automobile sustained by him in a collision of his automobile with another driven by defendant Carson and belonging to defendant Amelia E. Schultze, while both of said cars were being operated upon the National Road in a suburban section of the city of Wheling. There was a verdict of $15,000 for compensatory damages against the three defendants, and a verdict of $1,000 punitive damages against Amelia E. Schultze and Carson. Writ of error and supersedeas has been awarded by this Court on petition of the three defendants.

The accident occurred about one o'clock A. M., May 6,

1929.  The plaintiff was driving eastwardly toward his suburban home and the other car was proceeding westwardly in the direction of the central part of the city.  According to plaintiff's testimony, he was driving at the rate of about 25 miles per hour and to his right of the center of the road.  He observed the approach, at a high rate of speed, of the automobile which shortly thereafter collided with his.  When the automobile thus observed by plaintiff had proceeded to within a relatively short distance of his automobile, it suddenly swerved to its left diagonally across the highway and in the direction of plaintiff.  In an effort to avoid the impending collision plaintiff drove on to the sidewalk on his right side of the road, the right front and right rear wheels of his automobile being over the curb.  While in that position, the oncoming machine, afterwards found to belong to defendant, Amelia Schultze, and being then driven by defendant, Carson, collided with that of plaintiff, throwing him onto the highway and causing serious injury to himself and damage to his car.

While the statements of the plaintiff concerning the speed of his own machine and that driven by Carson and their respective positions upon the highway immediately before and after the collision are contradicted by Arden Friend who was riding in the car with Carson, a decided preponderance of the testimony shows that, after the collision and before the cars were moved, both machines were on the plaintiff's side of the highway; both rear wheels and the right front wheel of plaintiff's car were over the curb, and defendant's machine occupied a position at right angles to the same curb line, a few feet beyond plaintiff's car, and a very short distance from the curb.  Broken glass was strewn over the highway at the point occupied by the two automobiles.  According to the testimony of almost every witness who observed the damaged condition of both cars at the scene of the wreck, the left front wheel of the automobile driven by Carson was broken entirely off the axle and the left front fender and headlight materially damaged.  Both of the rear wheels, the rear axle and the left running board of plaintiff's car were smashed and broken beyond repair.  It is also in

evidence (uncontradicted) that "* * * practically the whole car (plaintiff's) was dismembered all the way through."

City police officer George Ebbert, who placed Carson under arrest and conducted him to the city jail, stated that he was intoxicated. The policeman was corroborated in this by other officers and individuals who saw Carson immediately following the collision. Arden Friend, however, denies that Carson was intoxicated. Carson did not testify.

A very short time after the collision plaintiff was taken to the Ohio Valley Hospital where, according to the physician who examined him there, he was found to be suffering from shock, bruises, a sprain of the right elbow and right knee joint, laceration of the lower left leg and a sprain and laceration of the ligaments of the sacroiliac joint. He was confined to his bed in the hospital for a period of six or seven weeks and then permitted to return to his home where he continued to receive treatment for his injuries for a period of four or five weeks. From the date of his confinement in the hospital, May 6, 1929, until the date of the trial of this case in the circuit court, May 20, 1930, plaintiff was forced to wear a belt or similar support because of the injury to the sacroiliac joint, and, according to testimony of physicians at the trial, it was advisable for him to continue to wear the belt or support for a period of six months to a year thereafter.

There arises a question of pleading which should be first considered. The trial court overruled defendants' demurrer to the declaration and each of the five counts. At the trial the court struck out the first two counts. In each of the three remaining counts the plaintiff alleges that he suffered personal injuries and that his automobile was completely destroyed, and asserts his right to recover on account of each of said elements of injury. Can these matters be united in the same counts?

Variant opinions exist as to whether, when a person suffers injury to both person and property as a result of a single act of negligence on the part of another, there arise two causes of action or but a single cause of action with two elements of damage. 1 Corpus Juris, p. 1058; 1 Ruling Case Law, p. 347. It is recognized that there are differences between the right

incident to personal injury and the right incident to property damage. The period if limitation of action for personal injury is shorter than the period for injury to property; the former dies with the person unless the injury caused death, the latter does not; the former is non-assignable, the latter is assignable; the former does not pass to the trustee of a bankrupt for the benefit of his creditors, the latter does; if the personal injury produces death the damages recovered by reason thereof are, under the express terms of the statute, conserved for the distributees of the deceased, while recovery for the property damage would go to his estate primarily for the benefit of creditors. This recital illustrates that different sets of situations may be presented as incident to a personal and property loss arising out of the same occurrence. Appropriate procedural requirements would attend.

It is a general rule of common law pleading that a party having a plurality of claims or causes of action, of the same general character, against the same defendant, not only can but should unite them in the same action. 1 Chitty on Pleading, p. 199; Hogg's Pl. & Forms, sec. 169; 1 Barton's Law Practice, p. 303; *Shaffer* v. *Railroad Co.,* 93 W. Va. 300; *Coal Land Development Co.* v. *Chidester,* 86 W. Va. 561. Of course, it is contemplated as a general rule that such matters shall be set forth in different counts. Burke's Pleading & Practice, sec. 473. If the plaintiff's claims for personal injuries and property damage, respectively, had been placed in separate counts of the declaration, there would seem to be no question of the propriety of the pleading. But the pleader not having framed the counts of the declaration in that manner, must the plaintiff be precluded from recovery under the declaration because of the intermingling of the several claims in each of the three counts which the court permitted the jury to consider? We think he should not be so precluded under the facts as pleaded. The two claims (the one for personal injury, the other for property damage) having arisen at the same time, out of the same accident, the suit brought within the one-year period of limitation applicable to the personal injury, and the claim incident to the alleged

property damage not having been assigned, we perceive no reason why the two claims may not be treated as different elements of the same cause of action, and therefore not improperly united in a single count. The following holdings from the common law states of Maryland and Illinois are forceful. "It is true that not more than one distant cause of action can be pleaded in the same count, yet where different and separate injuries have resulted from the same act or cause, the injuries or damages may be united and counted upon in the same count." *B. & O. Railroad Co.* v. *Ritchie,* 31 Md. 191, 198. "Where the damages result to a party in the same manner, and from the same negligent or wrongful act of the defendant, and are coincident in time, and the cause of action accrues to the plaintiff in the same right and against the defendant in the same character or capacity, they may be joined in the same count in the declaration." *Railway Co.* v. *Ingrahm,* 131 Ill. 659.

Plaintiff having admitted on cross-examination that he took a sixteen-day automobile trip to Canada the latter part of the summer, 1929, with a girl companion, and having further stated that on that trip his companion did most of the driving and that he drove but little, defendants inquired the name of the girl. The court sustained plaintiff's objection to this inquiry. This ruling is made a point of error. Defendants say that they were entitled to be informed as to the name of the girl so that they might have her summoned as a witness if she were within the jurisdiction of the court and inquire of her as to the extent of the driving that was done by the plaintiff himself. They say that this is important as bearing upon the plaintiff's physical condition at the time of the trip; that if it should be made to appear from her testimony that the plaintiff in fact did much of the driving, it would indicate that his physical condition was not as bad as he claims it was at that time. The bringing into court of this indiscreet girl would have involved at the most a mere fishing for possible facts and should she have testified that the plaintiff did most of the driving on the trip, such testimony, in the light of the medical testimony with reference to the nature and extent of the injuries of the plaintiff, would have

been of mere secondary importance at best, and in no wise controlling or conclusive of the question at hand. The trial court was right in not requiring a disclosure of her name, it not being plain that the administration of justice required it.

Another point of error pertains to alleged loss of profits. Plaintiff is a plumber by trade and conducted a small plumbing business from which he says that for some time prior to the accident he received profits of about $200.00 per month, and that such profits were practically lost following the accident because he was not able to give attention to his business. He testified at length about his business and his profits. (This is separate from his earnings from work and labor performed by him.) There having been repeated objection by the defendant to the plaintiff's testimony with reference to possible loss of profits, because purely speculative and conjectural, the court, after all of the testimony had been introduced, in connection with another ruling wherein he eliminated from consideration of the jury the first two counts of the declaration stated further: "I think possibly, Gentlemen, I ought to say that I don't think the matter of damages from the diminution of the business or the income of that business there is a proper matter for the consideration of the jury." Exception by plaintiff. THE COURT: "That has nothing to do with his own personal injury." The sufficiency of this ruling is challenged by the defendants. They say that the mischief was done when the court permitted this testimony to be given, and that the court's later statement with reference thereto, as above quoted, was not sufficient to cure the evil. Rulings of trial courts in striking out evidence which has gone to the jury should be characterized by precision and certainty. *Throckmorton* v. *Holt*, 180 U. S. 552, 48 L. Ed. 663; *Hubbard* v. *Equitable Life Assurance Society*, 88 W. Va. 361. It is to be noted, however, that at the time the said ruling was made there was immediate objection thereto by the plaintiff, though none by the defendants. If they thought that the court's ruling, which was in their favor, was not sufficiently clear and explicit, they should have called the court's attention to the matter so that there would have been timely

opportunity to consider their objection. Their objection comes now too late. As strengthening the view that the parties at the time deemed the question of damages for loss of profits as having been taken by the court from consideration of the jury, it is to be observed that in the plaintiff's instruction given by the court loss of profits is not included among the elements to be considered.

The right to a recovery against J. W. Schultze is challenged. The question follows: Does the record disclose sufficient evidence to sustain a verdict against this defendant? We think it does. Carson was employed in the Schultze home as a general utility man. Among his duties as such was the driving of the automobile with full authority to use it in a general way as chauffeur for the family. J. W. Schultze was quite frequently seen in the car with Carson. Mrs. Schultze testified that in her purchase of the automobile from Carson she used money that had in part at least been furnished by her husband. The latter did not testify at the trial.

At the time of the accident Carson was on a family mission; he was conveying a nephew of Mrs. Schultze from the Schultze home where he had been a guest to the point of destination of the nephew with the knowledge and approval of Mrs. Schultze.

"It is a generally accepted rule that where an employee is entrusted with the possession and operation of a vehicle with permission to use it at his discretion *in the business of his employer,* the latter will be held responsible for injuries resulting from the negligence of the employee in the use and operation of the vehicle. And in such a case it is not necessary for the person seeking damages arising from such source to prove that at the time the injury was inflicted the employee was engaged in executing *any particular business or specific command* of the master. It is only necessary for him to show that at the time the employee was acting within the general scope of his employment, and that the injury was due to his negligence." Berry on Automobiles (6th Ed.), Vol. 2, sec. 1397. Although it appears from the evidence that the title to the automobile causing the injury complained of

was in the name of Amelia Schultze, and that the license had not been transferred from Carson, it further appears that Carson, the driver, was employed and paid by J. W. Schultze, and that both Carson and the automobile were under his control, and that both the services of Carson and the use of the automobile were for the convenience of both J. W. Schultze and his wife. In view of these facts and circumstances, it is immaterial that the title to the car was in defendant's wife. *Penticost* v. *Massey,* 201 Ala. 261; Berry on Automobiles (6th Ed.), Vol. 2, sec. 1528. This must be so on principle, else a designing man might maintain an automobile for his family and escape liability for injury and damage caused by his chauffeur by the simple expedient of placing the title and ownership of the automobile in his wife's name.

Defendants assign as error the giving by the court of the one instruction tendered by the plaintiff. It was comprehensive and necessarily of some length. It is said that by this instruction it was assumed that there were permanent injuries and that the jury were permitted to assess damages therefor. By the instruction the jury were told that if they found for the plaintiff, then, in assessing his damages, they should award him such sum of money as they believed from the evidence would fully compensate him for the monetary losses sustained by him to the time of the trial and proximately caused by the wrongs complained of; for pain and suffering and for medical, hospital and nursing expenses incurred by him. And "for such pecuniary damages, if any, that the evidence discloses he is reasonably certain to sustain in the future because of such wrongs, * * *." And, further, that "from all these elements, you will determine what sum will fully, fairly and honestly compensate the plaintiff for the injuries that the evidence discloses he has sustained and is reasonably certain to sustain in the future by reason of the wrongs complained of * * *." The portions in quotations are those to which the objection is directed. We do not think that this phraseology is tantamount to an authorization of the jury to find damages for permanent injuries. It was in evidence, as already narrated, that it would be advisable for the plaintiff to wear a sacroiliac belt for a period of from six

months to one year subsequent to the trial, and that because of the injury which he suffered to his sacroiliac joint there would be at that point in his body a susceptibility to arthritis or rheumatism. The necessity for wearing the belt will probably not be permanent; but at the time of the trial both items carried future contingencies. The quoted phraseology of·the instruction does not purport to go any further than to tell the jury that these matters should be considered. Another objection goes to the latter part of plaintiff's instruction wherein the jury are told under what premises of belief they might find punitive damages as against defendants Carson and Amelia E. Schultze. This might be done, the jury were told, if they found from the evidence that "the injuries to the plaintiff were caused by reason of the fact" that the defendant, Carson, at the time of the injury, was driving an automobile in a reckless and wanton manner while he was intoxicated, and that when he left·the Schultze home a few minutes before the accident the defendant, Amelia E. Schultze, knew that he was intoxicated. The objection goes to the use of the word "fact." This portion of the instruction may not have been aptly phrased, but we are of opinion that it is not reasonably susceptible to the interpretation that the court meant thereby to tell the jury that the recited matters had been proved as a fact, but rather to tell the jury that if they believed that such matters had been proved as a fact, they might make a punitive finding.

Certain of defendant's instructions were refused. This is assigned as error. No 7 was a peremptory instruction to find for the defendant J. W. Schultze; No. 8 would have told the jury that there was not sufficient evidence to warrant a finding of damage to the plaintiff's automobile; No. 9 would have limited the bases of damages to expenses incurred by the plaintiff in treatment of his injuries, and to compensation for pain and suffering to the time of the trial and for six months thereafter; No. 10 would have told the jury there was no basis on which to predicate a finding of punitive damages against defendant Carson under the fifth count of the declaration; No. 11 would have told the jury, among other things, that there was no basis in the evidence for a

finding against defendant J. W. Schultze, and that the jury should find in his favor; No. 12 would have told the jury that there could be no recovery for the plaintiff solely on the ground of intoxication of defendant Carson. These instructions were properly refused. Comment is unnecessary except to say that the obvious reason for the refusal of No. 12 was that the plaintiff was not undertaking to predicate his claim for damages solely on the ground of the alleged intoxication of Carson; and there was therefore no occasion to emphasize that matter to the jury. No. 9 did not go far enough in that it ignored plaintiff's monetary damage by reason of loss of earning power through a period of months, and because it ignored the elements of future pain and inconvenience because of susceptibility to rhemuatism and because of the wearing of a sacroiliac belt.

The verdict is challenged on the ground of excessiveness. The evidence adduced by plaintiff discloses a monetary loss to him of approximately $5,000. This sum is inclusive of his loss of earning power, property damage, and the actual expenses incurred by him in the care and treatment of his injuries.

The difference between that sum and the total amount of the compensatory verdict, being in the neighborhood of $10,000, was evidently awarded by the jury because of the pain and suffering, the inconvenience, and the probability of future pain, suffering, and inconvenience, as well as a susceptibility to arthritis or rheumatism occasioned to the plaintiff because of the negligence of which the complaint is made. The amount of damages being ordinarily for the determination of the jury, we cannot say, under all the facts and circumstances, that the verdict was excessive or that it was so out of proportion to the monetary loss and the pain and suffering of the plaintiff as to indicate partiality or prejudice of the jury. *Truschel* v. *The Rex Amusement Company*, 102 W. Va. 215.

"The court should merely consider whether the verdict is fair and reasonable, and in the exercise of sound discretion, under all the circumstances of the case, and it will be so presumed, unless the verdict

is so excessive or outrageous with reference to those circumstances as to demonstrate that the jury have acted against the rules of law or have suffered their passions, prejudices, or perverse disregard of justice to mislead them. The courts must be governed in a measure by the circumstances of the particular case presented for their consideration and, where the circumstances of the case or the evidence produced indicate that the verdict has been the result of bias, prejudice, or gross overestimate, they have not hesitated to set it aside.'' 17 Corpus Juris, p. 1088.

Perceiving no prejudicial error in the record, the judgment of the trial court is affirmed.

*Affirmed.*