MARY BUFFA, *Admrx., etc.*

*v.*

ALLEN BAUMGARTNER, *et al.*

(No. 10202)

Submitted January 31, 1950.   Decided March 7, 1950.

*Mahan, White & Higgins, Joseph Luchini,* for plaintiff in error.

*Fletcher W. Mann, H. E. Dillon, Jr.,* for defendants in error.

Fox, JUDGE:

This is an action for wrongful death, tried before a jury in the Circuit Court of Fayette County, in which a verdict in favor of the defendants was returned and judgment entered thereon, after a motion to set aside said verdict had been overruled by the trial court. On September 6, 1949, we granted this writ of error to the judgment aforesaid

The defendant, G. A. Baumgartner, was the owner of an automobile, the use of which he permitted members of his family, including his son, Allen Baumgartner. The cause of action as against G. A. Baumgartner was based on the theory of the family purpose doctrine, recognized in this jurisdiction, and established by the cases of *Jones v. Cook,* 90 W. Va. 710, 111 S. E. 828; *Aggleson v. Kendall,* 92 W. Va. 138, 114 S. E. 454; *Ambrose v. Young,* 100 W. Va. 452, 130 S. E. 810; *Watson v. Burley,* 105 W. Va. 416, 143 S. E. 95; *Thalman v. Schultze,* 111 W. Va. 64, 160 S. E. 303; *Wyant v. Phillips,* 116 W. Va. 207, 179 S. E. 303; and *Eagon v. Woolard,* 122 W. Va. 565, 11 S. E. (2d) 257.

The declaration on which the action was tried, being an amended declaration, alleges the ownership of the automobile involved in the accident, in which plaintiff's decedent lost her life, to be in G. A. Baumgartner; that he authorized Allen Baumgartner to use said automobile for any purpose he desired, and especially for business and pleasure, and had authorized said Allen Baumgartner to use said automobile at the date of the injury and death involved. The declaration then alleges that said automobile was, at the time of the accident involved herein, operated by Allen Baumgartner on a public highway, and that plaintiff's decedent was a guest passenger, and lost her life by reason of the negligent operation of said automobile. It seems unnecessary to go into detail as to the several allegations of the declaration. It is sufficient to say that it alleges a good cause of action against both of the defendants, and was not attacked by demurrer or otherwise. The action was tried upon a plea of not guilty, resulting in the verdict and judgment aforesaid.

The facts in the case are that on the evening of August 5, 1948, Allen Baumgartner, accompanied by his friend John White, Jr., visited a road house on U. S. Route No. 19, between Fayetteville and Oak Hill, in Fayette County. While there they met three young women, one a married lady, another by the name of Helen Lacek, and plaintiff's decedent, Helen Margaret Buffa. This meeting was had

around ten o'clock at night, and they remained at that place for something less than an hour, and while there three of them consumed one bottle of beer, and John White, Jr. may have consumed two bottles. They then left said road house in the direction of a place called The Dugout, located on Route No. 19 near Beckley. Helen Margaret Buffa travelled in the car of the married lady to a point known as Cranberry, and White and Helen Lacek road with Allen Baumgartner in his father's automobile. At Cranberry, Helen Margaret Buffa left the car of the married lady, who returned to her home, and then travelled in the Baumgartner automobile to The Dugout. They remained at The Dugout for sometime, and while there they obtained and consumed the greater part of one pint of whiskey. The testimony is that three of them each took one drink, and there is some evidence that John White, Jr. may have taken two drinks. The remainder of the whiskey was disposed of without drinking. This drinking of beer and whiskey is admitted by all of the witnesses who testified in the case with respect thereto, except that there is some conflict as to the amount of each consumed by White; but all of them testify that none of the parties who consumed said beer and whiskey were intoxicated. Upon leaving The Dugout, they went in to Beckley, and visited one or more road houses in an effort to obtain food, but were unsuccessful. They then went to the residence of Helen Lacek, and White escorted her to the door of her home, and then returned to the automobile in which they had been riding. Meanwhile, Helen Margaret Buffa was taken to her home, and given an opportunity to enter the same, but she declined to do so and remained with Baumgartner and White.

Up to this point there is no substantial dispute as to what occurred during the evening, but a dispute arises in the testimony as to who drove the automobile from the Lacek home to the point of the accident and death of Helen Margaret Buffa. White testifies that when he returned to the automobile after escorting Helen Lacek to her home, he inquired of Allen Baumgartner if he wished

him to drive the automobile, and that Baumgartner replied, in effect, that he could do so if he wanted to. He then says that he got under the wheel of the automobile, but being unacquainted with the same, he could not get its engine started, whereupon he left the front seat of the car, and that Allen Baumgartner then took charge of the same and drove it from that point on to the place of the accident. He also says that he, White, got into the rear seat of the automobile, leaving Allen Baumgartner and Helen Margaret Buffa in the front seat. He then says that he soon fell into a deep sleep and was unconscious of what happened until he found himself lying in the road at the point of the accident.

The testimony of Allen Baumgartner is that when White returned to the automobile after escorting the Lacek girl to her home, he inquired if he, Baumgartner, wanted him to drive the automobile, and that he told him he could do so if he wanted to, or words to that effect; that White then got into the front seat of the automobile and that he, Baumgartner, and Helen Margaret Buffa seated themselves in the rear seat; that the automobile had been allowed to idle and its engine running at the time White took his seat under the wheel; that they then started in the direction of another road house south of Beckley with the idea of finding food. Being seated in the rear seat with the Buffa girl, he attempted, as he terms it, to "make love," but met with no response, presumably no favorable response. After the automobile was in motion on the highway, he was thrown to the side of the automobile seat in passing around a curve, and immediately fell into a deep sleep, and knew nothing of what happened until he found himself over the bank of the right hand side of the road in the direction they were travelling, at the point where the accident here involved occurred. This is all of the testimony of the parties who were present at the time of the accident, and who could testify. Helen Margaret Buffa was killed leaving only Allen Baumgartner and John White, Jr. to testify as to what actually occurred, and, unfortunately, if we believe both stories, which seems

impossible, each of them was in the rear of the automobile at the time of the accident, and both were wholly unconscious of what was happening.

There are, however, certain circumstances, and what may be termed physical facts, which throw some light as to how the accident really occurred. A member of the State Police examined the scene of the accident a short time after it happened.

He testifies that there was a sharp curve at the point of the accident. He located skid marks on the surface portion of the highway for eighty-one feet back of where marks indicated that the automobile had struck the steel guard rails on the right hand side of the road. The automobile grazed the guard rails for a distance of ninety feet, and then turned to the left and came to rest on the opposite side of the highway and near a bank, a distance of one hundred and twenty-six feet. The automobile when first examined showed that the right rear door thereof had been practically torn off, but the front door was closed so that it could not be opened without the use of mechanical tools, and the door was in such a condition as is described as being jammed. Allen Baumgartner was thrown out of the automobile and over the bank and was found about fifty feet from the highway. He was seriously injured, suffering a broken leg near the thigh. Helen Margaret Buffa, likewise thrown from the automobile, was found some twenty-five feet beyond and below where Baumgartner was found, and is believed to have been dead when first located. John White, Jr. when first seen after the accident was standing on the paved portion of the highway, and was calling for help. One witness, Lowe, testified that he was then intoxicated.

Members of the State Police soon came on the scene and found Allen Baumgartner and the body of Helen Margaret Buffa. The evidence of all is that there was detected the odor of alcohol on each of them, as well as on White. Corporal Thompson of the State Police testified that shortly after he arrived at the scene of the accident he

found Allen Baumgartner in his injured condition, and that he was badly injured, and in a state of shock. However, he was not unconscious and talked with the corporal. Thompson testified that he asked Baumgartner who was driving the car and that he replied "I was." C. C. McGraw, another member of the State Police, who arrived at the scene of the accident about an hour thereafter, testified that he talked with Allen Baumgartner, and that he was badly injured, was suffering from shock, but was not unconscious. He said that he tried to talk with him and he gives this statement of his conversation:

> "I asked him several times—I just don't know how many times I did ask him, but several times— what happened and who was driving. He kept repeating over and over, 'I don't know, I don't know; I guess I was driving, but I don't know. Please do something for Helen.' He was very much worried about Helen, about her condition, and all of his talk was about that."

J. D. Lowe, a fire-boss in the mines at Raleigh, first came on the scene of the accident and found John White, Jr. in the middle of the road. On being asked if he was hurt, he replied that he wasn't hurt, but that there were two other people down over the hill. He stated that he had conversation with John White, Jr. and upon being asked "I will ask you, Mr. Lowe, if on that occasion you asked him what had happened, and he said words to this effect, or in substance that: 'I—I—he hit the guard-rail.' " To which he replied: "Well, he was talking to Baumgartner at that time." He was then asked: "Did he say that to you?" To which he replied: "I was present when he said it, but we had done got down to where Baumgartner was at that time." He was then asked: "Did he also say to you words in substance to the effect that 'A car coming up the hill toward Beckley crowded me—him out of the road?' " To which he replied: "That's right."

Lowe testified for the defendants, and, of course, after the plaintiff had rested her case. Here for the first time, in the presentation of defendants' evidence, was any ques-

tion raised as to who was driving the automobile at the time of the accident. However, on cross-examination of John White, Jr., who testified for plaintiff, and after he had testified that he did not remember anything from the time he got into the automobile, at the Lacek home, until the accident, was asked if he could say positively that Allen Baumgartner was driving the automobile when the accident happened, and also whether he would state positively that he, Allen Baumgartner, drove that automobile from the Lacek home up until the time of the accident, replied in the negative. White had testified directly and positively that Allen Baumgartner was driving the automobile after the time he got into the rear seat thereof at the Lacek home.

Allen Baumgartner, who was the last witness offered by defense, testified positively that he was not driving the automobile at the time of the accident, and, as heretofore noted, stated that he was asleep at the time of the accident.

After the introduction of all the evidence, the question of instructions was taken up with the court. It is contended by the plaintiff that up to the time of the testimony of Allen Baumgartner she did not know that it would be contended that John White, Jr., and not Allen Baumgartner, was the driver of the automobile at the time of the accident. It was not so alleged in the declaration, and does not otherwise appear in the record, except as indicated above. With the evident intent and purpose of taking care of the situation which had arisen from the testimony of Allen Baumgartner that he was not the driver of the automobile at the time of the accident, plaintiff offered Instruction No. 11 which reads as follows:

"The Court further instructs the jury that even though you may believe from the evidence in this case that John White, Jr., was under the influence of intoxicants and was driving the automobile at the time and place of the accident which caused the injuries and death of Helen Margaret Buffa, if you further believe from the evidence that said automobile was then and there used for the

purposes of said G. A. Baumgartner and by his son and a member of his household, Allen Baumgartner, and if you further believe from the evidence that the said Allen Baumgartner authorized and permitted the said John White, Jr., to drive said automobile and at the time knew that he was under the influence of intoxicants and incapable of driving the car carefully and prudently, and if you believe that his suffering and permitting the said John White, Jr., to drive such automobile under the circumstances was negligence on his part which proximately caused the injuries and death of the said Helen Margaret Buffa, and that the said Helen Margaret Buffa was not guilty of contributory negligence, then you should find for the plaintiff and against both of the defendants."

There was objection to this instruction on the general ground that there was no allegation in plaintiff's declaration on which to base recovery on the theory that John White, Jr. was the driver of the automobile, and other grounds of objection were stated. Plaintiff then asked to amend her declaration by alleging that the defendants were negligent in the operation of their automobile, and in such manner as would meet the objection to said instruction raised by counsel for defendants. Objection to any amendment to the declaration was then interposed, and the trial court overruled the motion to amend, and refused to give Instruction No. 11, quoted above. At that time the court inquired of plaintiff's counsel if he wanted to insert the amendment at that time, to which counsel replied: "I doubt if I would be able to, Judge. I thought maybe I could present it later. It is just as I stated, a general cause of negligence on the part of both defendants, that they negligently and carelessly operated and suffered and permitted the automobile to be operated in a careless, reckless and negligent manner to produce this death, substantially as it is already alleged in the declaration." To which the court replied: "All right." Following this, and on April 29, 1949, some two or three days after the verdict of the jury was returned,

there was filed in the clerk's office what may be termed a second amended declaration in which it is alleged:

"* * * that on the day and year last aforesaid, and in the night time of said day, the deceased, Helen Margaret Buffa was riding as a guest passenger of the said defendant, Allen Baumgartner, in said automobile, which was then and there being operated and driven upon the public road and highway as aforesaid by the said Allen Baumgartner and by another at the direction and under the management, supervision and control of the said Allen Baumgartner, pursuant to his right and authorization as aforesaid, as a member of the household and family of the said defendant, G. A. Baumgartner; * * *."

The amendment apparently being intended to cover the case should the jury believe that John White, Jr., and not Allen Baumgartner, was the driver of the automobile at the time of the accident.

After refusing to permit plaintiff to amend her declaration, and after refusing to give her Instruction No. 11, the court then gave defendants' Instructions Nos. 2, 3 and 4, which in the order offered were in the words and figures following:

"The Court instructs the jury that you cannot presume Allen Baumgartner was driving at the time of the accident merely because the automobile belonged to his father or because he had been driving previously on the night of the accident. If you are not satisfied by a preponderance of the evidence which of the young men, Allen Baumgartner or John White, Jr., was driving the car then you should find for the defendants. And if you believe it was just as likely that one was driving as the other you should also find for both defendants."

"The court instructs the jury that unless you are satisfied by a preponderance of the evidence in this case that Allen Baumgartner was driving the automobile at the time of the accident complained of and that he was driving it negligently, then you shall find in favor of both defendants.

In determining whether Allen Baumgartner was driving the automobile you may take into consideration the nature and condition of the place of the accident, the situation which existed there immediately after the accident and all other circumstances and testimony in the case."

"The Court instructs the jury that if the condition of the road at the place of the accident and the circumstances which existed there immediately after it happened and the other evidence in the case convince you that Allen Baumgartner was not driving the automobile at the time of the accident, you should find in favor of both defendants."

It should be stated at this point that, in our opinion, the ·declaration on which the case was tried, that is the first amended declaration, was insufficient to support a recovery based upon a driving of the car by John White, Jr. The basis of the contention that the declaration would support such recovery must be the case of *Eagon v. Woolard, supra*. In that case there was an action by an injured person against the owner of the automobile, his son and a guest driver, which alleged that the automobile was negligently operated by the guest driver at the direction and under the management, supervision and control of the son. We held that that allegation stated a case of legal liability against the owner of the automobile, his son and the guest operator, and in the body of the opinion it was stated: "We base our decision upon the allegation of supervision and control of the car by the son of the owner." We think such an allegation, or something similar, should have been alleged in plaintiff's first amended declaration, on which the case was tried, if recovery was sought on the theory that White was the driver of the automobile at the time of the accident. We think we went as far as it is advisable to go in this character of ·cases when we decided the *Woolard* case, and we are not disposed to extend the family purpose doctrine beyond the point laid down in that case. Whether, as in that case, it was necessary to make the guest passenger party defendant, we do not decide, but it would certainly seem advisable to do so in all cases of that character.

The trial court, having refused to permit an amendment to the declaration, such as that proposed by the plaintiff, was justified in refusing plaintiff's Instruction No. 11, and in giving defendants' Instructions Nos. 2, 3 and 4, all quoted above. If the trial court had permitted an amendment to the declaration, such as proposed by the plaintiff, then we think it would have been justified in giving an instruction similar to plaintiff's Instruction No. 11, which would have called for a refusal to give defendants' Instructions Nos. 2, 3 and 4. The trial court pursued a perfectly logical course, and our decision in this case rests upon the single question of whether the trial court should have permitted plaintiff to amend her declaration as requested.

At common law, the right to amend a declaration, if it existed at all, was limited; but gradually there has grown-up a system of permitting amendments to all characters of pleadings, where the interests of justice will be promoted. Early in the history of Virginia as a state, an amendment to a declaration was permitted. In *Jude, Executor* v. *Syme,* 3 Call. (7 Va.) 522, an amendment to a declaration was permitted. In that case, it was stated:

> "The case was submitted to the jury, who not agreeing, a juror was by consent withdrawn. In this stage of the proceedings, plaintiff was permitted to amend his declaration, the cause being in paper, notwithstanding the jury had been sworn, as no verdict was rendered; during which time, amendments, in favor of justice, are within the discretion of the court."

In 1 Robinson's Practice (Old Ed.) 233, amendments to pleadings are recognized. This work was published in 1832. See also, 4 Minor's Part 2, 1083. The right to amend bills and declarations was provided by statute which appears as Section 14, Chapter 171, Va. Code, 1849, which reads:

> "The plaintiff may of right amend his declaration or bill before the defendant's appearance, and notwithstanding such appearance, a plaintiff in equity may, at any time in the vacation of the

court wherein the suit is pending, file in the clerk's office an amended or supplemental bill or bills of revivor * * *."

This same provision appears in the Va. Code, 1860, as Section 14, of Chapter 171.

On the formation of this State, and the adoption of the Code of 1868, the right to amend was greatly expanded. Section 12, Chapter 125, Code, 1868, provides:

"The plaintiff may of right amend his declaration or bill at any time before the appearance of the defendant, or after such appearance if substantial justice will be promoted thereby. But if such amendment be made after the appearance of the defendant, the court may impose such terms upon the plaintiff as to a continuance of the cause, and payment of the costs of such continuance, as it may deem just. * * *"

It will be observed that the right to amend is clearly extended to declarations. Chapter 71, Acts of the Legislature, 1882 (Barnes Code, 1923, Section 12, Chapter 125) somewhat expanded the right to amend and provided details in respect thereto, but did not substantially change the statute which had theretofore existed. Our present statute, Code, 56-4-24, provides:

"The plaintiff may of right amend his declaration or bill at any time before the appearance of the defendant; and, notwithstanding such appearance, in any action, suit, motion or other proceeding, the court, if in its opinion substantial justice will be promoted thereby, may, at any time before final judgment or decree, and upon such terms as it may deem just, permit any pleading to be amended, or material supplemental matter to be set forth in amended or supplemental pleadings, introducing a necessary party, discontinuing as to a party, eliminating from a multifarious bill all but one of the equitable causes of action alleged, or changing the form but not the cause of action, except that no proceeding by motion shall be converted by amendment into a formal action at law, or vice versa, and the court may allow any other

amendment in matter of form or substance in any process which is not void, pleading or proceeding, which may enable the plaintiff to sustain the action, suit, motion or proceeding for the cause for which it was intended to be brought, or enable the defendant to make full and complete defense."

We have traced the development of the right to amend pleadings, by either plaintiff or defendant, where substantial justice will be promoted, in order to illustrate the liberality imposed by legislative action. Legislative action in this respect amounts to little more than the development of this right as evidenced by many decisions of this Court. In *Hart* v. *Baltimore & O. R. R. Co.*, 6 W. Va. 336, an amendment to a declaration was permitted, and it was held that the statute of limitations did not run in such case in favor of the defendant up to the time of the filing of the amended declaration, but only until the commencement of the suit, by the issuance of the original right or process. In *Snyder* v. *Harper*, 24 W. Va. 206, it was held that: "After the appearance of the defendant the court should be liberal in allowing such amendments to the declaration, as tend to promote the fair trial and determination of the subject-matter of controversy, upon which the action was originally really based; * * *.", but holding that such amendment should not change the cause of action. In *Kuhn* v. *Brownfield*, 34 W. Va. 252, 12 S. E. 519, the same principle is upheld and it was there further held, citing *Lamb* v. *Cecil*, 28 W. Va. 653, that: "When an amendment to a declaration is properly allowed, according to the rule above stated, so far as regards the statute of limitation, it will have the same effect as if it had been originally filed in the amended form at the commencement of the suit, and a cause not then barred will not be treated as barred at the time of the amendment by reason of such amendment." See also *Adams* v. *Adams*, 79 W. Va. 546, 92 S. E. 463; *Pancake et al.* v. *Hite et al.*, 105 W. Va. 366, 142 S. E. 518; *Morrison, Receiver, etc.* v. *Judy et al.*, 123 W. Va. 200, 13 S. E. (2d) 751. Touching the application of this doctrine to tort actions, see *Clarke* v. *Ohio River R. Co.*, 39 W. Va. 732, 20 S. E. 696; *Mulvay* v. *Hanes*, 76 W.

Va. 721, 86 S. E. 758; *Merrill* v. *Marietta Torpedo Co.*, 79 W. Va. 669, 92 S. E. 112; *Bartley* v. *Western Maryland Railway Co.*, 81 W. Va. 795, 95 S. E. 443.

Counsel for defendants in error, while not contesting the liberal rule permitted in amendments to pleadings in this State, would limit the same to cases, such as that at bar, where the need to amend developed through the failure to make a declaration broad enough to cover the testimony offered by the plaintiff. We do not think this position is tenable. The rule permitting amendments is based upon the supposed necessity of permitting the same in order to promote substantial justice; and whenever a court perceives that justice will be promoted by permitting an amendment, it will not inquire whether the matter which develops the right to make the amendment comes from either the plaintiff or the defendant in the action being tried, or otherwise prosecuted. Cases are not always won by plaintiff's evidence, but are sometimes lost because of its weakness; and on the other hand, plaintiff's case is often aided by defendant's testimony. A jury's verdict should be based on all the testimony by whomsoever presented. In *Gadsden* v. *Crafts & Co. et al.*, 95 S. E. (N. C.) 610, it was held:

> "In a suit for injury alleged to have been caused by a defect in a scantling in that it was sawed nearly in two, wherein defendants' evidence tended to show its weakness was caused by a knot, plaintiff was properly allowed to amend by alleging this fact as an additional act of negligence, such amendment not being the statement of a new cause of action so as to be barred by the statute of limitations, which defendants proposed to plead, but merely a more accurate statement of that originally pleaded."

The case before us is somewhat complicated by questions raised when a motion to set aside the verdict was being heard by the trial court. Plaintiff's decedent had a sister who visited Allen Baumgartner in a hospital a few days after the accident in which her sister was killed, and Allen Baumgartner testified that he told her on that occasion,

in substance, that he was not the driver of the automobile involved in the accident. It does not appear that this statement, if made, was communicated to the plaintiff or to her counsel. On the other hand, Allen Baumgartner was interviewed on August 12, 1948, by one of counsel for plaintiff. He made a statement on that date, witnessed by Elizabeth Buffa and Julia Ann Patterson, the latter party being the person with whom Allen Baumgartner says he talked while in the hospital. In that statement, Allen Baumgartner said:

> "John [meaning John White, Jr.] took Helen up the steps of her door and came right back and Allen asked John if he wanted to drive or John asked Allen to drive, at any rate, John told Allen after the accident that he could not get the car started and that Allen drove the car when the accident happened. Allen remembers getting in the back seat with Helen Buffa after Helen Lacek was let out, but does not remember getting back into the driver's seat just before the accident. John White and the girls were not intoxicated. Allen doesn't think that the roads were .wet, and that it was not raining, and does not remember how dark the night was. This is the only statement Allen has made. The car was a 1946 Windsor Chrysler and owned by G. A. Baumgartner. In Allen's opinion John White was also sober. He did not drink more than Allen and was as sober as Allen."

The affidavit of Joseph Luchini, one of counsel for plaintiff, dated May 3, 1949, filed with the motion to set aside the verdict in the case, says that he examined John White, Jr., Corporal Thompson, Trooper McGraw and Allen Baumgartner, and that as a result of his investigation he did not learn or suspect from any witness involved that Allen Baumgartner would assert on the trial of the case that he was not the driver of the automobile until the defendants offered testimony in the trial of the case.

We have no way of knowing what induced the jury to arrive at the verdict it returned in this case. It may have reached that verdict in the belief that the plaintiff had

failed to establish an act of negligence on the part of Allen Baumgartner, or whoever may have been driving the automobile. But, in the circumstances of this case, it seems quite probable that the giving of defendants' Instructions Nos. 2, 3 and 4 which was the equivalent of an instruction to find for the defendants, was responsible for the verdict returned, particularly if the jury believed that John White, Jr., was the driver of the automobile at the time of the accident. To permit the verdict and judgment to stand would be to destroy any right of action on the part of plaintiff against either of the Baumgartners, whereas if the amendment had been permitted, the right to try the case on the theory that White may have been the driver would have been retained, as of the date when the action was originally instituted. In view of the liberality with which amendments are permitted in this State, both by statutory provisions and by the decisions of this Court, we are of the opinion that the trial court, in the exercise of the reasonable discretion lodged in it, should have permitted the amendment to have been made even though the same came very late. The discretion vested in trial courts, by Code 56-4-24, as to amendments to pleadings, is not absolute, but is a judicial discretion and subject to appellate review. *Webster* v. *Hurvitz,* 116 W. Va. 328, 180 S. E. 265; *Stealey* v. *Lyons,* 128 W. Va. 686, 37 S. E. (2d) 569. Where substantial justice is at stake, an amendment may be made at any time before judgment or decree. We do not think the record sustains the view that plaintiff had notice before trial of the claim made therein that John White, Jr., and not Allen Baumgartner, was driving the automobile at the time of the accident; certainly not until after the trial began, and not effectively until the testimony of Allen Baumgartner was introduced. The trial court had power to protect the defendants against surprise, in case the amendment was made, by permitting additional testimony to be introduced, or by a continuance of the case upon such terms as it might impose. On the whole, we think the trial court erred in refusing plaintiff the right to amend her declaration in the manner pro-

posed, and on this ground the judgment of the Circuit Court of Fayette County, entered on the 28th day of June, 1949, will be reversed, the verdict of the jury set aside, and the case remanded to said court with directions to permit plaintiff, if she so desires, to amend her declaration, so long as she confines the same to the pending cause of action, and for a new trial on such amended declaration.

*Judgment reversed; verdict set aside; cause remanded for amended declaration and new trial.*