# CHARLESTON.

LAWRENCE PETERS *v.* MONONGAHELA TRANSPORT COMPANY

(No. 6733)

Submitted September 9, 1930.   Decided September 30, 1930.

*D. H. Hill Arnold, Terence D. Stewart* and *Ezra E. Hamstead,* for plaintiff in error.
*George R. Farmer,* for defendant in error.

418

LITZ, JUDGE:

The defendant, Monongahela Transport Company, a corporation, complains of a judgment for $7,500.00 entered on the verdict of a jury against it in favor of the plaintiff, Lawrence Peters, for personal injuries sustained by him while a passenger on a motor bus operated for hire by it between Morgantown, West Virginia, and Uniontown, Pennsylvania.

The declaration contains three counts. The first charges that the defendant negligently, carelessly and unlawfully drove the motor bus into and against, and caused it to collide with, a certain Ford automobile, whereby the plaintiff sustained serious bodily injury. The charge of negligence in the second count is that the bus while proceeding at a high rate of speed, suddenly and without warning, was propelled to the right side of the road, off the concrete portion thereof and brought to a sudden stop, causing the plaintiff to be violently thrown and hurled from his seat, resulting in the injuries complained of. The third count, in general terms, charges the defendant with negligence in the operation of the bus at a high rate of speed.

The plaintiff boarded the bus at eleven o'clock P. M., October 16, 1928, for passage from Morgantown to Point Marion, Pennsylvania. Four persons took passage on the bus at Morgantown, as follows: Fred Guyaux, sitting on the right front seat; the plaintiff, sitting to the left next to the aisle on the first or second seat from the driver, with topcoat, overcoat and two small packages lying in the seat to his left next to the side of the bus; and two other passengers in rear seats, whose names are unknown. A short while after the bus left Morgantown, and as it approached what is locally known as "Cartwright Hill", Guyaux, observed a Ford coupe automobile coming at high speed from the opposite direction (veering toward one side of the road and then toward the other), remarked to the driver of the bus, "Look at that damn fool coming down the hill"; to which the driver responded, "I am watching him." Guyaux states that the bus and the car were then two or three hundred feet apart, and that the driver of the bus proceeded promptly to reduce speed and veer the bus to the right of the

center of the concrete surface which was eighteen feet in width. As the two machines came closer together, Guyaux exclaimed, ''He is going to hit us!'' and immediately the Ford, in which two men and two women were crowded (one woman sitting in the lap of one of the men), struck the left side of the bus. The impact dented the side, broke a window and tore loose the left rear fender, of the bus; and broke the left front wheel and fender of the Ford, causing it to cross the road to the right into a guard fence. The bus stopped within a short distance, variously estimated by the witnesses at from five to thirty feet. The plaintiff, sitting in a relaxed position, with his right arm near the arm of the seat and his left arm ''somewhere along the side'', was thrown to the floor, sustaining a fracture of the left elbow.

Defendant relies, for reversal, upon the theory that the evidence does not support the finding of the jury. Counsel for plaintiff, on the contrary, contends that the evidence establishes negligence on the part of the defendant, (1) in failing to stop the bus before the collision, (2) in failing to drive entirely off the road to avoid the collision, (3) in failing to sound a warning to the driver of the Ford, (4) in failing to warn the passengers of the impending danger, and (5) in bringing the bus to a sudden stop after the collision.

It is apparently conceded that the collision was caused by the negligence of Harry McCartney, driver of the Ford. Guyaux, the chief witness for the plaintiff, states, in accordance with the other evidence in the case, that the bus was to the right of the center of the concrete surface at the time of the collision, which would necessarily compel the conclusion that the Ford was encroaching upon the left half of the road at the time it struck the bus. True, McCartney, as a witness for the plaintiff, testified, after an evasive answer, that he was driving to the right of the center of the concrete surface. He gave no reason, however, for this statement, except to say that he saw a mark in the concrete ''middleways of the road,'' made by the hub of the left front wheel of his car. This circumstance alone clearly shows that the Ford was, at the time of the collision, encroaching upon the left half of the concrete surface, because: (1) the spindle of the axle extends several

inches beyond the hub of the wheel; (2) the wheel of the Ford struck the bus at an angle; and (3) as the Ford was deflected to the right on striking the bus, it necessarily traveled some distance at an angle to the right before the hub of the injured wheel came in contact with the road. It is also uncontroverted, as evidenced by imprints on the dirt berm, that the bus had entered thereon before the collision, and that both front wheels were off the concrete when it stopped.

No reason is given why the collision may have been avoided by stopping the bus.

Although the bus may not have been traveling to the extreme edge of the berm (which was damp) at the time of the collision, yet as the Ford was "running wild" at an angle toward the bus, there is no resonable ground for the presumption that with a few feet more of play the Ford would have missed the bus. It not being claimed that the driver of the Ford did not see the bus, no reason is perceived why a warning to him would have availed anything. As the plaintiff was, according to his testimony, cognizant and conscious of the situation, a specific warning from the driver to him was also unnecessary. The stopping of the bus immediately following the collision was naturally and reasonably to be expected. Guyaux states that he was shoved forward a little either by the collision or the stopping of the bus. When asked as to whether the application of the brakes had any effect upon him, he answered: "Well, it would be pretty hard to say, because it all happened right together, whether it was the brakes or the collision." His further examination, in this connection, follows: "Q. Were you moved in your seat? A. Just moved a little, not much. Q. Which way? A. Towards the front. Q. How far? A. Didn't shove me very far because I was braced, had my hand on the window there by the rail and I had my foot in the corner there. Q. In other words you were braced? A. When I seen it coming, I braced. Q. You were expecting an accident? A. I knew we were getting hit." Neither of the other passengers was injured.

Whether or not the evidence warrants the finding of negligence on the part of the defendant, the conceded facts, in our

opinion, clearly convict the plaintiff of contributory negligence. He made no effort to protect himself from the shock of the collision or the stopping of the bus, though, as already observed, cognizant and conscious of the situation.

"It is a well established rule, that, although there has been negligence on the part of the carrier contributing toward an injury, if a passenger fails to exercise ordinary care, and his failure is proximately connected with his injuries, he is guilty of contributory negligence which will defeat recovery." 10 Cyc. 1096. "The passenger is as much bound to use reasonable care to avoid injury as the carrier is to use the greatest degree of skill and care to save the passenger from harm." 5. R. C. L. p. 20.

The judgment is reversed, verdict set aside and a new trial awarded the defendant.

*Reversed and remanded.*