WINIFRED GILMORE *v.* HUNTINGTON CAB COMPANY,
*Doing Business, etc.*

(No. 9308)

Submitted April 21, 1942. Decided June 9, 1942.

Fox, President, and Rose, Judge, dissenting.

*Wilbert H. Norton* and *John E. Jenkins,* for plaintiff in error.
*J. J. N. Quinlan* and *E. H. Greene,* for defendant in error.

RILEY, JUDGE:

In this action of trespass on the case, Winifred Gilmore obtained a judgment in the Circuit Court of Cabell County of $9,000.00 against Huntington Cab Company, doing business as Checker Cab Company, for injuries received by her when a taxicab owned by defendant and driven by Howard Himes, its employee, overturned. Defendant prosecutes this writ of error to that judgment.

Winifred Gilmore, a seamstress, thirty-six years of age, on October 8, 1940, went to the home of Sadie Clark on Fifth Street in Huntington, West Virginia, to alter a garment. Lafe Clark, Sadie's brother, accompanied her, and the brother and sister having decided to "go somewhere" invited plaintiff to go with them. In response to a call for a taxi, defendant sent its cab, driven by Howard Himes, to the Clark residence, where Lafe and Sadie Clark and plaintiff entered the taxi and occupied the rear seat thereof. It was about 8:45 o'clock in the evening. Clark directed the driver to stop at a liquor store, where he purchased a pint of apricot brandy; and then having made inquiry of the driver of the fare to "Tanner's hamberger stand," located three or four miles from the liquor store, a place where "they served sandwiches and beer and coca cola" and where "they have a place to dance,"

Himes proceeded to Tanner's with his passengers. En route there, each of the passengers "took a little drink of brandy," and, according to the testimony of Sadie Clark and plaintiff, Himes stopped the cab and requested a drink of the brandy, to which request Clark acquiesced.

There is a conflict in the testimony offered by plaintiff as to what occurred when they reached Tanner's. Plaintiff and Sadie Clark testified that Lafe Clark paid Himes the fare and, advising him that "we wouldn't be out there but a little bit," asked Himes for his name and number, that Himes then "got in the cab," that the others went into Tanner's, occupied a booth, and plaintiff and Sadie each ordered a coca cola and Lafe Clark a beer, and "about the time they brought our order," Himes came in and asked if he might sit with his passengers, and the response being favorable, he joined them. Himes stated, however, that the women preceded Clark into Tanner's and while paying the fare, Clark asked him if he wanted another drink and Himes having answered in the negative, Clark invited him to drink a coca cola. Himes ordered beer. According to him he consumed three or four bottles, while plaintiff and Sadie Clark are positive in their testimony that he drank only one and one-half bottles. The remainder of the brandy was poured into an empty coca cola bottle and consumed by the four. While at Tanner's, according to plaintiff, Lafe Clark asked Himes "how much it would be from there on to go on out to Poe's Raven (a distance of approximately 12 miles) to get a chicken dinner," and Himes advised that he would have to charge a dollar and a half an hour for the cab and "him as the driver." Himes denies that anything was said by either of the women or by Clark about paying for the trip from Tanner's to Poe's Raven, although there appears in the record the following question and answer:

"Q. How much did you charge from here, or did you charge from here for the use of your cab that you drove?

"A. The regular rate per hour is $1.50."

Himes also testified that he considered that he was on duty.

Between nine and nine-thirty o'clock the three passengers and Himes proceeded to Poe's Raven, located in Wayne County, twelve or fourteen miles from Tanner's. Himes invited Sadie Clark to ride in the front seat with him, while Lafe Clark and plaintiff occupied the rear seat. Plaintiff testified that Himes "started just like any other cab. And then he speeded." She estimated Himes' driving at sixty or seventy miles an hour. There was a protest from each of the passengers and a request that Himes drive "a little slower." Having complied with the request, Himes then announced that he was "not going to drive like this," began to speed, and in going around a curve, the car upset. Plaintiff was injured and Lafe Clark killed. According to a member of the Department of Public Safety, the accident occurred at 9:45 P. M., and at a point approximately three and one-half to four miles from Tanner's.

At the conclusion of all evidence, defendant requested a directed verdict, which was denied. The jury returned a verdict of $9,000.00, on which judgment was entered. Defendant asserts two grounds as basis for reversal: (1) That Himes was not acting within the scope of his employment at the time of the accident, and (2) plaintiff is chargeable, as a matter of law, with contributory negligence.

The guides for determining the first assignment of error are clear. In this jurisdiction, proof that defendant was the owner of the motor vehicle which caused an injury, resulting from the negligence of the driver thereof, creates a presumption that the driver when the collision occurred was in the service of the owner and operating it on his account. *Ercole* v. *Daniel,* 105 W. Va. 118, 141 S. E. 631. The presumption is, however, rebuttable and "if creditable evidence to the contrary is offered, the presumption loses its legal force and only the facts which gave rise to it remain to be considered by the jury, along with the other evidence." *Jenkins* v. *Spitler,* 120 W. Va. 514, 199 S. E. 368. Does the record contain such evidence that warrants this Court to say that the legal force of the presumption is destroyed or that, as a matter of law,

the driver of the cab was acting outside the scope of his authority? In the instant case, it is an irrefragable conclusion that Himes was acting within the scope of his authority at the time he discharged his passengers at Tanner's; and it is likewise evident that those same passengers contemplated his further services as driver later that evening. We have detailed the seeming conflict between the testimony of Winifred Gilmore and Himes relative to the fare to Poe's Raven, and while it is true Himes denies that either plaintiff or the Clarks said anything about paying the fare, the record is silent of any contradiction of plaintiff's testimony that he (Himes) was asked the fare to Poe's Raven, or that Himes would have to charge $1.50 an hour; but though Himes' testimony may be considered a positive contradiction of plaintiff's version, we may not accept it as true in the light of plaintiff's testimony. The testimony of Sadie Clark, corroborated by plaintiff and not denied by Himes, that she started to get into the rear of the cab and, only upon invitation of Himes, entered the front has evidential significance that she was entering the cab as a paying passenger rather than as a partner of Himes in a frolic. Upon such contrariety of evidence, we can not say that the trial court erred in submitting the issue to the jury for determination, nor can we say that its conclusion thereon is erroneous. We do not attribute pertinency to the contention of defendant that Himes failed to report that he was going to Poe's Raven. Such a violation of duty by the agent does not relieve the principal from liability. *Brightwell* v. *Simpson,* 106 W. Va. 471, 146 S. E. 383; *Yellow Cab Co.* v. *Halford,* (Tex. Civ. App.) 91 S. W. (2d) 801.

The standard of care prescribed by this Court for the operation of a taxicab is utmost care compatible with the driving thereof. *Venable* v. *Gulf Taxi Line,* 105 W. Va. 156, 141 S. E. 622. Defendant admits that Himes was intoxicated at the time of the accident. Since we have stamped as untenable the position of defendant that Himes was not acting within the scope of his authority when he

wrecked the cab and caused plaintiff's injuries, it necessarily follows that Himes' primary negligence, in legal effect, must be held to be that of his principal. To free itself of liability therefor, defendant urges plaintiff's conduct, under the stated facts, was such that she may not recover. While admitting that contributory negligence ordinarily is for jury determination, defendant urges that the instant case is one for application of the rule that when the facts are undisputed, and there is no basis for reasonable minds to differ as to the inferences or conclusions to be deduced therefrom, the question is then one of law for the court. See *Parks* v. *Tillis,* 112 W. Va. 295, 164 S. E. 797; *Wood* v. *Shrewsbury,* 117 W. Va. 569, 186 S. E. 294. It is argued further that another applicable rule is that adopted in *Peters* v. *Transport Company,* 109 W. Va. 417, 155 S. E. 178, to the effect that a carrier is not liable to a passenger for injury to which the latter has proximately contributed by failure to exercise reasonable or ordinary care.

In the instant case, although plaintiff's witness Caldwell testified that Himes was intoxicated in the afternoon preceding the accident, plaintiff herself testified that Himes drove in a careful manner when he took them from the home of Sadie Clark to the liquor store. We can not, therefore, attach any pertinency to Caldwell's testimony in the light of plaintiff's admission, and we do not think that it may be gainsaid that Himes' intoxication occurred while in the company of his passengers. Himes' conduct in requesting of Clark a brandy drink en route to Tanner's, and his participation in the festivities there, as well as plaintiff's acquiescence thereto, may not seem meet, yet we can not attach any moral turpitude to such conduct. Plaintiff herself did not furnish to Himes either the brandy or beer, and whatever relevancy may, from a legal standpoint, attach to her tacit assent to Himes' drinking, such pertinency may reflect itself only in determining whether she was contributorily negligent in entering the taxicab at Tanner's at the inception of the trip to Poe's Raven. The testimony of plaintiff's witnesses that all passengers protested the speed at which

Himes was driving negatives any element of contributory negligence subsequent to the time when the cab driver began the operation of his motor vehicle. What was Himes' condition when the four left Tanner's to enter the cab? According to plaintiff, Himes opened the door of the cab for her, at which time he gave no indication of being intoxicated, that as far as she could observe he was "all right," and that he (Himes) "did not give us any reason to think (him) otherwise" than sober. She admitted, on cross-examination, her testimony in a prior hearing held in connection with Himes' arrest for involuntary murder in connection with Lafe Clark's death, to the effect that she would not say he was either drunk or sober. Such, too, was the testimony of Sadie Clark. Himes' testimony is of no aid. He recalls nothing from the time of leaving Tanner's, supposedly because the "whiskey and beer together knocked me out." Hence, on the one hand there appears the unequivocal fact that Himes was intoxicated at the time of the accident, while the evidence as to his condition when the party entered the taxicab may be said to be negative in character. Upon such testimony, the motion of defendant for a directed verdict was tantamount to a request that the trial judge infer that the amount of brandy consumed by Himes in the taxi and beer and brandy at Tanner's would result in his becoming intoxicated.

In an action which involved the alleged contributory negligence of a guest passenger, based upon an admission that the driver had been drinking, the Supreme Court of Pennsylvania held that the question was for jury determination and observed:

> "The admitted fact that Crane had drunk three glasses of beer some time before the party started to return to Philadelphia does not prove that he was unfit to drive the car, either at the time he started on the return trip, or at the time of the accident."

*Landy* v. *Rosenstein,* 325 Pa. 209, 188 A. 855. Likewise, in *Tomlinson* v. *Kiramidjian,* 133 Cal. App. 418, 24 P. (2d) 559,

the deceased served defendants with beer but did not know of their drinking at another place, and later entered the automobile of one of defendants as a guest passenger and, enroute to her home, requested the driver to stop and get some beer, which they drank. The driver, while driving between fifty-five and sixty miles an hour, overturned the car, causing the death of deceased. The Court said:

> "From evidence that a person had been drinking intoxicating liquor and thereafter drives his car in a negligent manner, it does not follow as a matter of law that he was driving while under the influence of intoxicating liquor. There is no evidence in the record from which it can be said as a matter of law that deceased knew, or should have known, that Christian was under the influence of intoxicating liquor before he entered the automobile the last time, or that after discovering his intoxicated condition he had a clear chance to leave the automobile at a safe place."

See also *Yorke v. Cottle*, 173 Va. 372, 4 S. E. (2d) 372.

The record under consideration does not show that the admitted drinking by plaintiff or either of the Clarks resulted in intoxication. There is positive testimony that plaintiff herself was not intoxicated, and just prior to the accident Himes was sufficiently sober to heed the protest of his passengers. We can not say, as a matter of law, that what Himes drank would have intoxicated him, and we therefore think that the trial court correctly regarded the issue of plaintiff's contributory negligence one for jury determination.

*Wayson v. Rainier*, 136 Wash. 274, 239 P. 559, 45 A. L. R. 290, is urged by defendant as authority to deny plaintiff's right of recovery. That case involved the correctness of an instruction which submitted to the jury the question of plaintiff's contributory negligence. The record before us does not contain the instructions, if any, given by the trial judge, and the sole issue on the question of contributory negligence is whether the motion for a directed verdict should have been sustained. *Archer v.*

*Bourne,* 222 Ky. 268, 300 S. W. 604, likewise cited by defendant, illustrates a factual situation wherein both plaintiff and defendant were passengers in a cab for hire, but liability was not sought against the taxi company, owner of the vehicle, but from a co-passenger. The Kentucky court in *Adams* v. *Hilton,* 270 Ky. 818, 110 S. W. (2d) 1088, in distinguishing the result of the *Archer* case from a situation where the relationship of public carrier and passenger existed, noted that in the former case plaintiff might have been accorded a recovery had "the proof showed that Bourne controlled the movements of the machine and the acts of the driver."

For the foregoing reasons, the judgment of the trial court is affirmed.

*Affirmed.*

Fox, PRESIDENT, dissenting:

I am unable to concur in the majority opinion in this case. The defendant cab company furnished the plaintiff and her companions a sober driver. He became intoxicated thereafter, and that intoxication resulted from drinking in the presence of the plaintiff, and, if not on the invitation of some members of her party, certainly with her knowledge and acquiescence. I think it clear that the driver was intoxicated at the time of the accident, and whether plaintiff knew that he was actually in an intoxicated condition at the time she entered the automobile with him, subsequent to the drinking of which she had knowledge, is relatively immaterial. She did know of this drinking, and should have known that it was calculated to affect his ability to carefully drive an automobile. In these circumstances, when she entered the automobile driven by him, she assumed the risk, and this bars recovery on her part. Without any showing of fault on its part, the cab company is made to bear the pecuniary burden of this unfortunate accident, and is required to respond in damages for the wrongdoing of others, including the plaintiff. I know of no rule which requires us to sanction what I conceive to be a manifest injustice.

I am authoried to state that Judge Rose joins in this dissent.