Lois Ann Payne

*v.*

William Earl Kinder

(No. 12163)

Submitted September 11, 1962.    Decided October 23, 1962.

*Alexander & Bailey, Arch J. Alexander, Jr., Gene W. Bailey, Chauncey H. Browning, Jr.,* for plaintiff in error.

*Palmer & McCutcheon, J. Campbell Palmer, III,* for defendant in error.

HAYMOND, JUDGE:

In this action of trespass on the case instituted in the Court of Common Pleas of Kanawha County the plaintiff, Lois Ann Payne, a married woman, seeks to recover from the defendant, William Earl Kinder, damages for personal injuries which the plaintiff alleges were caused by the negligence of the defendant. The injuries of which the plain-

tiff complains were sustained in a collision between an automobile owned and driven by the husband of the plaintiff in which she was riding as a guest and an automobile owned and occupied by the defendant and driven by an unidentified person who had been permitted by the defendant to operate his automobile. The collision occurred about six thirty o'clock in the evening of May 16, 1959, on U. S. Route No. 119, in Kanawha County.

Upon the trial of the action the jury, on March 30, 1960, returned a verdict in favor of the plaintiff for $5,000.00. On October 19, 1960, the trial court overruled the motion of the defendant to set aside the verdict and grant him a new trial and rendered judgment in favor of the plaintiff for the amount of the verdict with interest and costs. Upon writ of error the Circuit Court of Kanawha County, by judgment rendered September 28, 1961, reversed the judgment of the court of common pleas of October 19, 1960, and remanded the case to that court for a new trial. To that judgment of the circuit court this Court granted this writ of error and supersedeas upon the application of the plaintiff.

Before the collision in which the plaintiff sustained the injuries of which she complains, the defendant had been several times arrested for drunkenness and at the time of the collision his driver's license had been revoked. In that situation he could not lawfully operate his automobile and in the afternoon of the day of the collision his wife accompanied by the defendant drove his automobile to a section of the City of Charleston. After parking the automobile, she went to the shopping district of the city for the purpose of making some desired purchases.

The defendant went from the parked automobile to a nearby beer parlor or cafe known as the Pastime on Kanawha Boulevard where he drank five to seven bottles of beer and met two men, whom he had not previously known, who were also drinking beer at that place. During a conversation with them he told them that his driver's license had been revoked and that he could not drive his automobile. They requested him to permit them to drive his automobile to Boone County to see the sister of the taller of the

two strangers. They told him that they would purchase gasoline and return the defendant to his father's home on Park Avenue in Charleston. He consented and told them that he would go with them. The two men and the defendant then entered the front seat of the automobile.

The defendant occupied the space between the two strangers and the taller of the two strangers became the driver. They went to a liquor store on Tennessee Avenue where one of the strangers purchased two bottles of vodka and returned with them to the automobile. From that place they proceeded to a restaurant known as the Gold Dome where the strangers purchased two bottles of "Seven Up" for use in drinking the vodka. One of the bottles of vodka was placed in the glove compartment of the automobile and the defendant opened and took seven or eight drinks from the other bottle while riding in the automobile. It does not clearly appear that either of the strangers drank any of the vodka from that bottle, although when the automobile was examined the next day after the collision one of the bottles remained in the glove compartment and the bottle from which the defendant had drunk vodka was missing. According to the defendant he did not drink all of the contents of that bottle.

After leaving the Gold Dome restaurant the strangers purchased gasoline at a nearby filling station. The automobile then proceeded east on U. S. Route No. 119 for a distance of approximately nine miles and stopped at a beer parlor known as the Windmill in or near Marmet, where one of the strangers ordered beer. The defendant was intoxicated and became sick and unable to drink the beer ordered at that place. The defendant and his stranger companions had left the Pastime about ten minutes after four o'clock and they remained at the Windmill until a short time before the collision. All of them drank beer at both beer parlors and each of the strangers consumed at the least an amount equivalent to two or three bottlesful of beer.

The defendant recalled what occurred at the Pastime and during the ride from that place to the Windmill and

what had happened there. He also remembered being assisted by the strangers from the Windmill to the rear seat of his automobile and its departure from that place. After that he became unconscious and did not know what had happened until he later awoke in the city jail in Charleston where he was informed of the collision and from which he was taken to his home by his wife after she had learned of his whereabouts.

Sometime after the automobile of the defendant had left the Windmill and had proceeded for some distance on U. S. Route No. 119 it was driven off the improved portion of the highway by one of the strangers and parked on its east berm. While it was in that position the plaintiff and her husband accompanied by her mother and their daughter were proceeding north on U. S. Route No. 119 in a Chevrolet automobile owned and driven by her husband. As that automobile, traveling on the right side of the highway, the improved portion of which was approximately twenty feet in width, approached the place where the automobile of the defendant was parked the automobile of the defendant, moving in a southerly direction, suddenly and without sign or warning entered the highway and collided with the automobile in which the plaintiff was riding. The automobile of the defendant struck the automobile in which the plaintiff was riding near its right front wheel and pushed or knocked it across the highway and into a ditch on its west side. In the collision the plaintiff sustained severe and permanent injuries to her person.

After the collision the two strangers, according to the testimony of the husband of the plaintiff, left the automobile, ran along the road, and permanently disappeared. When recalled for further questioning after the conclusion of his examination in chief he testified that one of the strangers put his hand on the shoulder of the other stranger and staggered and that the other stranger staggered around the automobile and struck it with his hand; that both of them then engaged in a struggle, raised their hands, and pushed each other; and that in the opinion of the witness "they were pretty well lit up".

The beer which the defendant and the strangers obtained and drank at the Pastime and at the Windmill was beer which contained not more than 3.2 per cent of alcohol by weight and was of the type defined by Section 5, Article 1, Chapter 60, Code, 1931, as amended, as nonintoxicating beer, the sale of which is authorized and regulated by the provisions of Article 16, Chapter 11, Code, 1931, as amended. Section 2 of that statute declares such beer to be nonintoxicating and not to be construed as liquor as that term is used in Chapter 60 of the Code.

Though a portion of the stomach of the defendant had been removed by surgical operation which caused him to be quickly affected by liquor and his doctor had advised him to refrain from drinking or smoking, the defendant did drink a substantial quantity of beer and six or seven average size drinks from one of the bottles of vodka with the result that he became unconscious from intoxication shortly before the collision occurred.

The principal basis of the plaintiff's claim, as set forth in the amended declaration upon which the case was tried, and on which the plaintiff relies for recovery, is the alleged violation by the defendant of Section 2, Article 5, Chapter 17C, Code, 1931, as amended, which to the extent here pertinent provides that "It is unlawful * * * for any person who is under the influence of intoxicating liquor to drive any vehicle on any highway of this state or for any owner of such vehicle to knowingly permit the same to be so operated by one under the influence of intoxicating liquor." The plaintiff contends that the violation of this statute by the defendant constituted negligence which was the proximate cause of her injuries.

The circuit court reversed the judgment of the court of common pleas on the ground that the refusal of that court to give Instruction 14A, offered by the defendant, constituted reversible error.

The plaintiff assigns as error the action of the circuit court in reversing on that ground the judgment of the court of common pleas and the defendant in his brief in this Court,

by counter assignment under Rule XI of the Rules of Practice in this Court, cross-assigns numerous errors in the judgment of the court of common pleas. The errors so assigned by the defendant are, in substance, the action of the trial court: (1) In permitting the husband of the plaintiff, after he had completed his testimony in chief and his cross-examination by the defendant had been waived, to be recalled for further examination in chief and to testify concerning the conduct and the condition of the two strangers when they departed from the automobile of the defendant after the collision; (2) in permitting the last amended declaration, which alleged as elements of damages medical and hospital expenses incurred and wages lost by the plaintiff, to be filed more than five months after the return of the verdict but before the entry of the judgment; (3) in refusing to submit to the jury certain special interrogatories requested by the defendant; (4) in giving certain instructions offered by the plaintiff; and (5) in refusing to give numerous instructions offered by the defendant concerning the subjects of the relation of bailor and bailee between the defendant and the driver of his automobile, the application of Section 2, Article 5, Chapter 17C, Code, 1931, as amended, to the facts of this case as disclosed by the evidence, and the nonintoxicating character of the beer consumed by the defendant and the driver of his automobile.

The plaintiff challenges the right of the defendant to cross-assign error upon this appellate review of the case. She contends that inasmuch as the counter assignment was not filed until more than eight months after September 28, 1961, when the judgment of the circuit court was rendered, it was not filed within the time permitted by the statute relating to petitions presented to this Court for appeal or writ of error, and that in so far as Rule XI of this Court permits counter assignment of error to be filed after the expiration of eight months from the entry of the final judgment, the rule contravenes the statute and for that reason is invalid and of no force and effect.

The foregoing contention of the plaintiff is devoid of merit. The statute in question, Section 4, Article 5, Chapter

58, Code, 1931, provides that "No petition shall be presented for an appeal from, or writ of error or supersedeas to, any judgment, decree or order, whether the State be a party thereto or not, which shall have been rendered or made more than eight months before such petition is presented." It does not relate to assignment or counter assignment of error upon the hearing of the case after an appeal or a writ of error has been granted. Rule XI does not deal with the petition for appeal or writ of error but relates to and governs the counter assignment of error by the appellee or the defendant in error in any case in which an appeal or a writ of error has been granted. There is no conflict between the statute and the rule and each of them deals with a different phase of litigation. The statute has no application to counter assignment of error and Rule XI, which deals with the subject, is a valid rule of this Court. Under Rule XI of the Rules of Practice in the Supreme Court of Appeals an appellee or a defendant in error may cross-assign error which in his opinion is prejudicial to him and call attention to such error by counter assignment of error filed at the hearing of the case or by pointing out and complaining of such error in his brief; and the statute which requires a petition for appeal or writ of error to be presented within eight months after judgment, decree or order has been rendered or made does not apply to or govern the counter assignment of error in a case in which an appeal or a writ of error has been granted by this Court. As the defendant has complied with the requirements of that rule, his counter assignment of error is properly before this Court for consideration in the decision of this case.

In his examination in chief the husband of the plaintiff, called as a witness in her behalf, in relating what occurred immediately after the collision, testified that "two fellows got out at that time and they got out and ran around up the road and I don't know who they *was* and I never saw them before in my life." At the conclusion of the examination in chief the attorney for the defendant stated that he did not desire to cross-examine the witness who was then excused. He was later recalled as a witness for the plaintiff and, over the objection of the defendant, was permitted to

give this testimony concerning the conduct and the condition of the same persons: "Well, when they got out, one got out ahead of the other one, and when the last one got out he went to the first one and the other one reached out and put his hand on his shoulder and then he staggered off, and the other one staggered around the car and hit the car with his hand and the other one come around and they got in a struggle and they kept putting their hands up and pushing each other off and I couldn't say what they were saying and they just kept moving and they were pretty well lit up to my notion."

This Court has held that a trial court has wide latitude in the conduct of a trial, and particularly in matters pertaining to the examination of witnesses, and its rulings in relation to the examination of witnesses will not be reversed except when there has been a plain abuse of its discretion. Point 1, syllabus, *Jones* v. *Hebdo,* 88 W. Va. 386, 106 S. E. 898; *Dowler* v. *Citizens' Gas and Oil Company,* 71 W. Va. 417, 76 S. E. 845, Ann. Cas. 1914C 341; *Franklin* v. *Geho,* 30 W. Va. 27, 3 S. E. 168; *Laughlin* v. *Rose,* 200 Va. 127, 104 S. E. 2d 782. In *Dowler* v. *Citizens' Gas and Oil Company,* 71 W. Va. 417, 76 S. E. 845, Ann. Cas. 1914C, 341, this Court held in point 6 of the syllabus: "Wide discretion is given to the trial court in matters pertaining to the examination of witnesses, and it is not error to permit a witness to be recalled, after having refreshed his recollection, to correct a mistake in his previous testimony as to a date." In the opinion in that case this Court adopted this quotation: "Much latitude of discretion should be allowed the trial court in the matter of recalling witnesses, and its action will not be reversed by an appellate court except for palpable error." In *Franklin* v. *Geho,* 30 W. Va. 27, 3 S. E. 168, point 6 of the syllabus is in this language: "The courts are liberal in allowing parties plaintiff or defendant, after their evidence is closed, to recall witnesses and again examine them to supply omitted facts. If such action of the court is reversible at all, it would only be when the discretion was obviously abused to the prejudice of the opposite party, and in a manner, which, if allowed, would tend to pervert justice." See also 20 Michie's Jurisprudence, Wit-

nesses, Section 48; 58 Am. Jur., Witnesses, Section 561; 98 C.J.S., Witnesses, Section 365. There is nothing in the record to indicate that the action of the trial court in permitting the witness to give additional testimony concerning the conduct and the condition of the two men amounted to abuse of discretion or prejudiced any right of the defendant; and the admission of such testimony did not constitute prejudicial error.

Section 24, Article 4, Chapter 56, Code, 1931, provides in part that the plaintiff may of right amend his declaration or bill at any time before the appearance of the defendant and that, notwithstanding such appearance, in any action, suit, motion or other proceeding, the court, if in its opinion substantial justice shall be promoted thereby, may at any time before final judgment and upon such terms as it may deem just, permit any pleading to be amended, or material supplemental matter to be set forth in amended or supplemental pleadings, to the extent of introducing a necessary party, discontinuing as to a party, eliminating from a multifarious bill all but one of the equitable causes of action alleged, or changing the form but not the cause of action. "Code, 56-4-24, vests in a trial court of this State the power and discretion to permit amendments to pleadings in both law and equity, at any time before final judgment or decree, if in its opinion substantial justice will be promoted thereby, and the proposed amendment does not change the cause of action·alleged in the bill or declaration intended to be amended." Point 1, syllabus, *Buffa* v. *Baumgartner,* 133 W. Va. 758, 58 S. E. 2d 270. See also *Shrimplin* v. *Simmons Auto Company,* 122 W. Va. 248, 9 S. E. 2d 49.

Under a well settled rule of practice, courts of law and equity exercise great liberality in permitting amendments to pleadings; and the authority to do so exists independently of statute. *Stealey* v. *Lyons,* 128 W. Va. 686, 37 S. E. 2d 569; *Sammons Bros. Construction Company* v. *Elk Creek Coal Company,* 135 W. Va. 656, 65 S. E. 2d 94; *Buffa* v. *Baumgartner,* 133 W. Va. 758, 58 S. E. 2d 270; *Grottendick* v. *Webber,* 132 W. Va. 539, 52 S. E. 2d 700; *Long* v. *Pocahontas Consolidated Collieries Company,* 83 W. Va. 380, 98 S. E.

289; *National Bank of Weston* v. *Lynch,* 69 W. Va. 333, 71 S. E. 389; *Staats* v. *Georgia Home Insurance Company,* 57 W. Va. 571, 50 S. E. 815, 4 Ann. Cas. 541; *Travis* v. *Peabody Insurance Company,* 28 W. Va. 583. The authority to permit amendments may be exercised whenever justice will be promoted. *Sammons Bros. Construction Company* v. *Elk Creek Coal Company,* 135 W. Va. 656, 65 S. E. 2d 94; *Stealey* v. *Lyons,* 128 W. Va. 686, 37 S. E. 2d 569; *Staats* v. *Georgia Home Insurance Company,* 57 W. Va. 571, 50 S. E. 815, 4 Ann. Cas. 541; *Ratliff* v. *Sommers,* 55 W. Va. 30, 46 S. E. 712, 1 Ann. Cas. 970. The discretion of the court to permit amendments is not an absolute, but a sound, discretion, which is subject to appellate review. *Sammons Bros. Construction Company* v. *Elk Creek Coal Company,* 135 W. Va. 656, 65 S. E. 2d 94; *Buffa* v. *Baumgartner,* 133 W. Va. 758, 58 S. E. 2d 270; *Stealey* v. *Lyons,* 128 W. Va. 686, 37 S. E. 2d 569; *Webster* v. *Hurvitz,* 116 W. Va. 328, 180 S. E. 265. An amendment, however, may not change the cause of action. *Stealey* v. *Lyons,* 128 W. Va. 686, 37 S. E. 2d 569; *Edgell* v. *Smith,* 50 W. Va. 349, 40 S. E. 402; *Snyder* v. *Harper,* 24 W. Va. 206.

It was not error for the trial court to permit the plaintiff in her last amended declaration to include as elements of damages sought to be recovered the items of $110.00 for doctor bill, $108.79 for hospital bill, and $525.00 for loss of wages. The plaintiff testified that she was employed at the rate of $150.00 per month at the hospital at which she was treated and at which she incurred the charge of $108.79, that it would be deducted from her wages unless otherwise paid by her, and that she would pay the doctor bill of $110.00 from her earnings. As the plaintiff has become personally liable for the payment of these items they are proper elements of damages for which she, though a married woman living with her husband, may recover in this action. In an action for personal injuries a married women living with her husband may recover for loss of time and money expended in effecting her cure, if she avers and proves that she employed her time, or some material part of it, in her own separate earnings or business and that she has paid the expenses of her cure out of her separate estate or that she

is personally liable for such expenses. In *Hains* v. *Parkersburg, Marietta and Interurban Railway Company*, 75 W. Va. 613, 84 S. E. 923, this Court held in point 6 of the syllabus that "The earnings of a married woman are her separate estate, and, although she is living with her husband, she may sue alone for a personal injury, and is entitled to recover for loss of time and money expended in effecting a cure, if she avers and proves that her time, or a material part of it, was spent in earning money for herself." See also *Larzo* v. *Swift and Company*, 129 W. Va. 436, 40 S. E. 2d 811; *Warth* v. *County Court of Jackson County*, 71 W. Va. 184, 76 S. E. 420. In the *Larzo* case the opinion contains this language: "Notwithstanding that a married woman is living with her husband, she may recover ' * * * for loss of time and money expended in effecting a cure, if she avers and proves that her time, or a material part of it, was spent in earning money for herself.' "

It is clear from the foregoing authorities that the trial court had the authority, in the exercise of sound discretion, to permit the plaintiff to file her last amended declaration after the verdict had been returned but before judgment was rendered; and the action of the trial court in permitting that declaration to be filed did not constitute an abuse of discretion or prejudice any right of the defendant. In permitting the last amended declaration to be filed and in overruling the demurrer of the defendant to that declaration the trial court did not commit error.

As this case was tried and the verdict was returned before July 1, 1960, when the new Rules of Civil Procedure became effective, the pronouncements in this opinion as to amendments to pleadings relate to such amendments under the procedure in effect before the adoption of the new rules and do not relate to amendments to pleadings under the rules in effect since July 1, 1960. That question is not involved in this appellate review.

The defendant also contends that the trial court erred in refusing to submit to the jury seven special interrogatories requested by the defendant. This contention is without merit. The separate single issues referred to in each of

the interrogatories were neither numerous nor complicated and it is evident that a special verdict as to any of them would not have assisted the jury in arriving at a correct general verdict. This Court has consistently held that the giving or the refusal of special interrogatories is in the sound discretion of the trial court, that such discretion is subject to judicial review, and that it is not an abuse of discretion for the trial court to refuse to submit special interrogatories to the jury in a case in which it is evident that special verdicts would not aid the jury in reaching a correct conclusion by a general verdict. *Spence v. Browning Motor Freight Lines, Inc.*, 138 W. Va. 748, 77 S. E. 2d 806; *Daugherty v. Baltimore and Ohio Railroad Company*, 135 W. Va. 688, 64 S. E. 2d 231; *Tennessee Gas Transmission Company v. Fox*, 134 W. Va. 106, 58 S. E. 2d 584; *Davis v. Pugh*, 133 W. Va. 569, 57 S. E. 2d 9; *Gilkerson v. Baltimore and Ohio Railroad Company*, 132 W. Va. 133, 51 S. E. 2d 767; *The County Court of Mingo County v. Chattaroy Coal Company*, 105 W. Va. 321, 142 S. E. 430; *Lovett v. Lisagor*, 100 W. Va. 154, 130 S. E. 125; *Richards v. Riverside Iron Works*, 56 W. Va. 510, 49 S. E. 437; *Peninsular Land Transportation and Manufacturing Company v. Franklin Insurance Company*, 35 W. Va. 666, 14 S. E. 237; *Wheeling Bridge Company v. Wheeling and Belmont Bridge Company*, 34 W. Va. 155, 11 S. E. 1009; *Kerr v. Lunsford,* 31 W. Va. 659, 8 S. E. 493, 2 L. R. A. 668. In the *Lovett* case this Court held, in point 2 of the syllabus: "It is not an abuse of such discretion for the trial court to refuse to submit special interrogatories to a jury in a case where the issues are few and uncomplicated, and it is apparent that special verdicts would not assist the jury in arriving at a correct conclusion." In refusing to submit the requested interrogatories to the jury the trial court did not abuse its discretion and its action did not constitute reversible error.

The defendant complains of the action of the trial court in refusing to submit to the jury the question whether the relation of bailor and bailee existed between the defendant and the unknown driver of his automobile and to instruct the jury with respect to the legal effect of a bailment of his automobile by the defendant. The refusal of the trial court

to submit that question and to give several instructions offered by the defendant based upon his theory that the unknown driver of the automobile was a bailee, among them instructions numbered 1, 2, 3 and 14A, was proper and did not constitute error.

Though it is true that the defendant testified that he "loaned" his automobile to the strangers or the one who became the driver, gave him the key which controlled the ignition, and did not attempt to direct or control the operation of the automobile, numerous clearly established facts and circumstances show that he did not relinquish or surrender his right to control the operation of his automobile; that he was aware of the acts and the condition of the driver at all times from their departure from the Pastime until the defendant lost consciousness after leaving the Windmill and until a short time before the collision; that he consented to the visit to the liquor store, the purchase of the bottles of vodka and "Seven Up", and the visit to the Windmill; that he and the strangers drank together at the Windmill; that he drank the vodka which they purchased and consented to the purchase by them of the gasoline; and that until they left the Windmill the use and the operation of his automobile were mutually beneficial to each of them and furthered the interest and served the purpose of the defendant as much as they did the interest and the purpose of each of the strangers. It is evident that the defendant had the right to control the operation of the automobile and could have directed the driver to refrain from visiting the liquor store, the Gold Dome and the Windmill at any time he wished to do so but that instead he desired to continue his association with them in the use of his automobile and to participate with them in drinking together. The defendant was not required or compelled to continue to permit the stranger to operate his automobile. He gave such permission freely and voluntarily and allowed the stranger to continue to drive the automobile because the defendant wanted him to do so until the defendant became unconscious from intoxication. He did not at any time object to or protest the operation of the automobile by the driver or request or direct him or either of the strangers not to purchase the

vodka or the gasoline, or even suggest that the driver refrain from taking him to the Windmill or that the strangers return him to the home of his father as they told him they would do. Actually the immediate purpose of all of them was not to go to Boone County but to visit a place or places where beer could be obtained and there to drink it in common.

Proof that a defendant was the owner of the motor vehicle which caused the injury resulting from the negligence of the driver of such vehicle creates a rebuttable presumption that the driver, when the injury occurred, was in the service of the owner and operating it on his account. *Laslo v. Griffith,* 143 W. Va. 469, 102 S. E. 2d 894; *Gilmore v. Huntington Cab Company,* 124 W. Va. 469, 21 S. E. 2d 137; *Lacewell, Admr. v. Lampkin,* 123 W. Va. 138, 13 S. E. 2d 583; *Jenkins v. Spitler,* 120 W. Va. 514, 199 S. E. 368; *Malcolm, Admr. v. American Service Company,* 118 W. Va. 637, 191 S. E. 527; *Meyn v. Dulaney-Miller Auto Company,* 118 W. Va. 545, 191 S. E. 558; *Shahan v. Jones,* 115 W. Va. 749, 177 S. E. 774; *Ercole v. Daniel,* 105 W. Va. 118, 141 S. E. 631; Annotation 2, 50 A.L.R. 2d 1283. Though such presumption is rebuttable, the evidence in this case is insufficient for that purpose and does not overcome or rebut such presumption. The mere presence of the owner in an automobile while it is being driven in a negligent manner by another person does not necessarily render the owner liable for injury caused by the negligence of the other person; but the presence of the owner in the automobile at the time of the injury is an important element when recovery is sought on the theory that the operator was acting as the servant or the agent of the owner or that the owner had control of the operation of the automobile. 5A Am. Jur., Automobiles and Highway Traffic, Sections 577 and 578.

The test of the liability of the owner of an automobile who is present while it is being driven by another person is whether the owner retains or relinquishes his right of control and not whether he exercises that right. *Beam v. The Pittsburgh Railways Company,* 366 Pa. 360, 77 A. 2d 634; 5A Am. Jur., Automobiles and Highway Traffic, Section 577.

The distinction between the relation of bailor and bailee and the relation of master and servant depends upon the right of control. In 6 Am. Jur., Bailments, Section 58, are these statements: "A bailor and bailee do not stand in the relation of master and servant to each other. The relation of master and servant is to be distinguished from that of bailment, although in certain cases there may be an apparent similarity. The duties and obligations of the bailor and bailee are totally different, and the former has no control over the latter or his servants. Employment as a servant by a master imports control and direction by the latter of the former's acts within the scope of the relationship, and it is not necessary to the relation that personal property be placed in the hands of the servant. The bailment relation, on the other hand, is concerned only with personal property, and the bailee is not subject to control and direction in carrying out the purposes of the bailment, except as provided for in the contract, but occupies rather the position of an independent contractor. So, where the owner of a chattel delivers it to another to perform work in respect to or by means of it, the relationship of the parties is that of bailor and bailee where the owner parts with control over it and is that of master and servant where he retains control thereof." In 8 C.J.S., Bailments, Section 5, the distinction between the relation of bailor and bailee and that of master and servant is stated in this language: "The relation of bailor and bailee is to be distinguished from that of master and servant in that property in the hands of a servant is in the possession and control of the master, the servant having only custody, while in the case of bailment the possession and control of the property, * * * , passes to the bailee during the period of the performance of the contract, * * * ." See also *Wicklund* v. *North Star Timber Company*, 205 Minn. 595, 287 N. W. 7.

As the evidence fails to show that the defendant relinquished his control of the automobile to the driver but on the contrary indicates that he did not do so, and as the evidence was not sufficient to establish the relation of bailor and bailee between the defendant and the driver of his automobile, the trial court was fully justified in refusing to

submit the question of that relation to the jury and in refusing to instruct the jury concerning it.

Whether the relation between the defendant and the driver of his automobile was that of bailor and bailee, or master and servant, however, is of no consequence or importance if the evidence shows that the defendant entrusted his automobile to the unknown driver and permitted him to operate it when, to the knowledge of the defendant, the driver was under the influence of intoxicating liquor, in violation of the provisions of Section 2, Article 5, Chapter 17C, Code, 1931, as amended, which have been heretofore quoted in this opinion. Liability of the owner of an automobile for the negligence of another person who operates it while under the influence of intoxicating liquor does not arise from or depend upon the relationship of the parties. See *Jenkins* v. *Spitler,* 120 W. Va. 514, 199 S. E. 368; *Deck* v. *Sherlock,* 162 Neb. 86, 75 N. W. 2d 99. In 5A Am. Jur., Automobiles and Highway Traffic, Section 580, the text contains these statements: "Liability for the negligence of the incompetent driver to whom an automobile is entrusted does not arise out of the relationship of the parties, but from the act of entrustment of the motor vehicle, with permission to operate the same, to one whose incompetency, inexperience, or recklessness is known or should have been known by the owner. Nor does such liability rest upon imputed negligence or upon ownership or agency; rather, it rests upon the combined negligence of the owner and the driver—negligence of the owner in entrusting the vehicle to an incompetent driver, and negligence of the driver in its operation."

The firmly established and generally recognized principle is that an owner who entrusts his motor vehicle to one whom he knows, or from the circumstances is charged with knowing, to be incompetent or unfit to drive it is liable for injury inflicted which results from the use of the automobile by the driver if the injury was proximately caused by the disqualification, incompetency, inexperience, intoxication or recklessness of the driver. 5A Am. Jur., Automobiles and Highway Traffic, Section 580; Annotation 4bl, 68 A.L.R. 1013. In *Deck* v. *Sherlock,* 162 Neb. 86, 75 N. W. 2d 99, the

opinion contains this language: "The law requires that an owner use care in allowing others to assume control over and operate his automobile, and holds him liable if he entrusts it to, and permits it to be operated by, a person whom he knows or should know to be an inexperienced, incompetent, or reckless driver, to be intoxicated or addicted to intoxication, or otherwise incapable of properly operating an automobile without endangering others." See also *McGowin v. Howard,* 246 Ala. 553, 21 So. 2d 683; *Gardiner v. Solomon,* 200 Ala. 115, 75 So. 621, L.R.A. 1917F 380; *Owensboro Undertaking and Livery Association v. Henderson,* 273 Ky. 112, 115 S. W. 2d 563; *Brady v. B. and B. Ice Company,* 242 Ky. 138, 45 S. W. 2d 1051; *Donovan v. Standard Oil Company of Louisiana* (La. App.), 197 So. 320; *Gordon v. Bedard,* 265 Mass. 408, 164 N. E. 374; *Saunders v. Prue,* 235 Mo. App. 1245, 151 S. W. 2d 478; *Daily v. Maxwell,* 152 Mo. App. 415, 133 S. W. 351; *McIlroy v. Akers Motor Lines, Inc.,* 229 N. C. 509, 50 S. E. 2d 530; *Williamson v. Eclipse Motor Lines, Inc.,* 145 Ohio St. 467, 62 N. E. 2d 339, 168 A.L.R. 1356; *Clark v. Stewart,* 126 Ohio St. 263, 185 N. E. 71; *Elliott v. Harding,* 107 Ohio St. 501, 140 N. E. 338, 36 A.L.R. 1128; *Dicranian v. Foster,* 114 Vt. 372, 45 A. 2d 650; *Laughlin v. Rose,* 200 Va. 127, 104 S. E. 2d 782; *McNeill v. Spindler,* 191 Va. 685, 62 S. E. 2d 13; *Crowell v. Duncan,* 145 Va. 489, 134 S. E. 576, 50 A.L.R. 1425; *Mitchell v. Churches,* 119 Wash. 547, 206 P. 6, 36 A.L.R. 1132; *Crockett v. United States,* 116 F. 2d 646, certiorari denied, 314 U. S. 619, 62 S. Ct. 57, 86 L. Ed. 498; *Harrison v. Carroll,* 139 F. 2d 427; 60 C.J.S., Motor Vehicles, Section 444; Annotation II, 168 A.L.R. 1365, and the many cases from different jurisdictions there cited.

In *Jenkins v. Spitler,* 120 W. Va. 514, 199 S. E. 368, in holding a bailor liable for injury caused by defective brakes of an automobile which the bailor knew were defective when the automobile was delivered to the operator who was involved in a collision which resulted in an injury to a third person, the opinion contains this language: "Generally, a gratuitous bailor who, knowing of a defect in an automobile rendering it unfit for use, is liable for injuries to third persons, who are without fault themselves, proximately resulting from the defect. *Saunders System Birmingham*

*Company* v. *Adams*, 217 Ala. 621, 117 So. 72, 61 A.L.R. 1333 and note. In *Hinsch* v. *Amirkanian*, 7 N. J. Misc. R. 274, 145 Atl. 232, the court held that where the use of an automobile with defective brakes was authorized by the owner, such evidence was sufficient to sustain a verdict against him for personal injuries to a third person."

The violation of a statute or an ordinance is prima facie actionable negligence when it is the natural and proximate cause of an injury. *Spurlin* v. *Nardo,* 145 W. Va. 408, 114 S. E. 2d 913; *Barniak* v. *Grossman,* 141 W. Va. 760, 93 S. E. 2d 49; *Walker* v. *Robertson,* 141 W. Va. 563, 91 S. E. 2d 468; *Morris* v. *The City of Wheeling,* 140 W. Va. 78, 82 S. E. 2d 536; *Pitzer* v. *Tomkies & Sons,* 136 W. Va. 268, 67 S. E. 2d 437; *Moore* v. *Skyline Cab, Inc.,* 134 W. Va. 121, 59 S. E. 2d 437; *Somerville* v. *Dellosa,* 133 W. Va. 435, 56 S. E. 2d 756; *Rich* v. *Rosenshine,* 131 W. Va. 30, 45 S. E. 2d 499; *Skaff* v. *Dodd,* 130 W. Va. 540, 44 S. E. 2d 621; *Powell* v *Mitchell,* 120 W. Va. 9, 196 S. E. 153; *Oldfield* v. *Woodall,* 113 W. Va. 35, 166 S. E. 691; *Tarr* v. *Keller Lumber and Construction Company,* 106 W. Va. 99, 144 S. E. 881, 60 A.L.R. 570. The evidence was sufficient to warrant the jury to find, as it did by its verdict for the plaintiff, that the defendant violated the provisions of Section 2, Article 5, Chapter 17C, Code, 1931, as amended, and that the violation of the statute was the natural and proximate cause of the injury to the plaintiff. The evidence shows that the strangers were or had been drinking beer when the defendant first met them at the Pastime beer parlor and that while they were with him each of them drank two or three bottles of beer; that though the defendant did not see them drink any of the vodka, or know that they did, he did not drink all of the contents of one bottle of vodka and it could reasonably be inferred that they drank some of its contents; that they staggered when they left the scene of the wreck after it occurred; that in the opinion of the husband of the plaintiff they were intoxicated at that time; and that the defendant remembered what occurred from the time that he met the strangers at the Pastime beer parlor until he lost consciousness shortly before the wreck and knew that they were under the influence of intoxicating liquor when he permitted

one of them to drive his automobile from the time they entered it after leaving the Pastime until he became unconscious shortly before the collision.

"When a case has been tried and the questions of fact arising in it have been submitted to a jury and a verdict has been fairly rendered, and the trial court has committed no error of law, this Court will not disturb the verdict unless manifest wrong or injury has been done or it clearly appears that the verdict is contrary to the weight of the evidence or that it is without any evidence to support it." Point 11, syllabus, *Thrasher* v. *Amere Gas Utilities Company*, 138 W. Va. 166, 75 S. E. 2d 376; *Laslo* v. *Griffith*, 143 W. Va. 469, 102 S. E. 2d 894; *Wilson* v. *Edwards*, 138 W. Va. 613, 77 S. E. 2d 164; *Yuncke* v. *Welker*, 128 W. Va. 299, 36 S. E. 2d 410; *Dangerfield* v. *Akers*, 127 W. Va. 409, 33 S. E. 2d 140; *Ware* v. *Hays*, 119 W. Va. 585, 195 S. E. 265. See also *Dodrill* v. *Young*, 143 W. Va. 429, 102 S. E. 2d 724; *Davis* v. *Sargent*, 138 W. Va. 861, 78 S. E. 2d 217; *Webb* v. *Brown and Williamson Tobacco Company*, 121 W. Va. 115, 2 S. E. 2d 898.

There is no merit in the contention of the defendant that the declaration of the Legislature in Section 2, Article 16, Chapter 11, and Section 5, Article 1, Chapter 60, Code, 1931, as amended, that beer which contains not more than 3.2% of alcohol by weight is nonintoxicating and is not to be construed as liquor, renders such beer incapable of causing any person who drinks it to become intoxicated or to be under the influence of intoxicating liquor. On the contrary, the effect of such statutory declaration was not to determine and does not determine whether beer which contains not more than 3.2% of alcohol by weight, in fact, can or can not or does or does not produce intoxication, or subject a person who drinks it to alcoholic influence, but instead merely classifies it as nonintoxicating for the purpose of authorizing and regulating its manufacture and sale in this State and facilitating the enforcement and collection of the license tax imposed. Similar statutes in other states which declare beer or wine which contains not more than a specified alcoholic content to be nonintoxicating have been generally considered as having been adopted merely for the

purpose of regulating and controlling the sale of such beverages and of facilitating the enforcement and collection of the license tax imposed. *Commonwealth* v. *Bridges,* 285 Mass. 572, 189 N. E. 616; *Drew* v. *State,* 71 Okla. Cr. 415, 112 P. 2d 429; *Foglesong* v. *State,* 69 Okla. Cr. 360, 103 P. 2d 106; *State* v. *Parquette,* 54 R. I. 283, 172 A. 613; *State* v. *Turner,* 198 S. C. 499, 18 S. E. 2d 376; *Richmire* v. *Legg,* 3 F. Supp. 787.

In *State* v. *Turner,* 198, S. C. 499, 18 S. E. 2d 376, the court said: "The law of this State authorizes the sale of beer and wine by persons duly licensed. * * * . It is true that the Legislature has declared (Act No. 198, 1939, page 302), beer and wine containing not in excess of a specified alcoholic content to be non-alcoholic and non-intoxicating beverages, but, in our opinion, it is clear from a reading of the whole act that such definition was adopted for no purpose other than to regulate and control the sale of wine and beer, and to facilitate the enforcement of the license tax imposed." In *Commonwealth* v. *Bridges,* 285 Mass. 572, 189 N. E. 616, in speaking of the statute which defines as nonintoxicating certain beverages containing not more than a specified alcoholic percentage, the opinion states that the statute "did not amount to a warranty on the part of the Commonwealth that a person might drink any quantity of such beverage without coming under the influence of intoxicating liquor." In *State* v. *Parquette,* 54 R. I. 283, 172 A. 613, with reference to a similar statute, the court said: "Nothing is found in this chapter which says, either directly or by implication, that the consumption of a beverage containing alcohol will not have an intoxicating influence upon the consumer." The foregoing comments in the opinions in the Massachusetts and Rhode Island cases apply to the nonintoxicating provisions of the statutes of this State. To give those provisions a different meaning or effect would be to give sanction to a legislative declaration contrary to an existing factual condition. Whether beer which is declared to be nonintoxicating actually produces intoxication or subjects a person who consumes it to the influence of intoxicating liquor is a factual question which can not be determined by mere legislative

fiat but is governed by the facts and circumstances in any given instance.

It is well settled that a factual reality can not be changed or overcome by mere legislative fiat and that a legislative declaration which is clearly contrary to the actual facts will not be recognized or sanctioned in a judicial proceeding. *Hope Natural Gas Company* v. *The West Virginia Turnpike Commission,* 143 W. Va. 913, 105 S. E. 2d 630; *State ex rel. Cashman* v. *Sims,* 130 W. Va. 430, 43 S. E. 2d 805, 172 A.L.R. 1389; *State ex rel. Adkins* v. *Sims,* 127 W. Va. 786, 34 S. E. 2d 585; *Woodall* v. *Darst,* 71 W. Va. 350, 77 S. E. 264, 80 S. E. 367, 44 L.R.A., N. S., 83, Ann. Cas. 1914B 1278. The concurring opinion in *State ex rel. Adkins* v. *Sims,* 127 W. Va. 786, 34 S. E. 2d 585, contains these statements: "The Legislature may not declare that a public purpose which is clearly a private one. It cannot, by its mere fiat, make black white. *Ohio Oil Co.* v. *Wright,* 386 Ill. 206, 53 N. E. [2d] 966." In *Ohio Oil Company* v. *Wright,* 386 Ill. 206, 53 N. E. 2d 966, the Supreme Court of Illinois said: "The legislature does not have the power by legislation to declare that not to be a fact which everyone knows is a fact, (*Winter* v. *Barrett,* 352 Ill. 441,) and, by the same reasoning, cannot legislate that to be a fact which everyone knows is not a fact." Surely the Legislature can not stop the rain by merely declaring that there is none. "A statute creating a presumption that is arbitrary or that operates to deny a fair opportunity to repel it violates the due process clause of the Fourteenth Amendment. Legislative fiat may not take the place of fact in the judicial determination of issues involving life, liberty or property." *Western and Atlantic Railroad Company* v. *Henderson,* 279 U. S. 639, 49 S. Ct. 445, 73 L. Ed. 884; *Manley* v. *State of Georgia,* 279 U. S. 1, 49 S. Ct. 215, 73 L. Ed. 575. In the *Hope Natural Gas Company* case this Court said: "While it is true that the legislature has specified that the Commission is an agency of the state and that the exercise by the Commission of the powers conferred upon it shall be deemed and held to be an essential governmental function, this declaration alone cannot make it so, if the factual realities are otherwise."

The question whether the driver of the automobile of the defendant was under the influence of intoxicating liquor by reason of his consumption of beer declared by statute to be nonintoxicating depends upon and is determined by the evidence and is not controlled by the legislative declaration that such beer is nonintoxicating.

Instruction No. 14A, offered by the defendant and refused by the trial court, was properly refused. A portion of the instruction is abstract in character and is not supported by the evidence. The instruction is also misleading and would tend to confuse the jury. For these reasons the instruction was properly refused. The refusal to give an abstract instruction is not reversible error. *Thrasher* v. *Amere Gas Utilities Company*, 138 W. Va. 166, 75 S. E. 2d 376, and the cases cited in the opinion in that case. Instructions must be based upon the evidence and an instruction which is not sustained by evidence should not be given. *Wilson* v. *Edwards*, 138 W. Va. 613, 77 S. E. 2d 164; *Thrasher* v. *Amere Gas Utilities Company*, 138 W. Va. 166, 75 S. E. 2d 376; and the numerous cases cited in the opinions in those cases. An instruction which tends to mislead the jury is erroneous and should be refused. *Wilson* v. *Edwards*, 138 W. Va. 613, 77 S. E. 2d 164; and the cases cited in the opinion in that case. As the instruction was erroneous it was properly refused by the trial court and the action of the circuit court in reversing the judgment of the trial court on the ground that the instruction should have been given will be reversed by this Court.

Careful consideration of the instructions mentioned in the counter assignment of error and complained of by the defendant discloses no prejudicial error in the action of the court of common pleas in giving Instructions Nos. 1, 2, and 3, offered by the plaintiff, or in refusing to give the instructions offered by the defendant which that court refused to give.

The judgment of the circuit court reversing the judgment of the court of common pleas is reversed and this case is remanded to the court of common pleas with directions that

the verdict of the jury be reinstated and judgment entered upon the verdict in favor of the plaintiff.

*Judgment reversed,*
*case remanded*
*with directions.*